# SUPREME COURT OF ARIZONA
## En Banc

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-97-0428-AP |
| Appellee, | |
| v. | Maricopa County Superior Court No. CR-95-01754(A) |
| TIMOTHY STUART RING, | |
| Appellant. | CONSOLIDATED WITH |

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-99-0536-AP |
| Appellee, | |
| v. | Maricopa County Superior Court No. CR-96-04691 |
| ANTOIN JONES, | |
| Appellant. | CONSOLIDATED WITH |

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-99-0439-AP |
| Appellee, | |
| v. | Pima County Superior Court No. CR-58016 |
| DANNY N. MONTAÑO, | |
| Appellant. | CONSOLIDATED WITH |

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-00-0328-AP |
| Appellee, | |
| v. | Maricopa County Superior Court No. CR 98-04885 |
| WAYNE BENOIT PRINCE, | |
| Appellant. | CONSOLIDATED WITH |

```
STATE OF ARIZONA,                    )  Arizona Supreme Court
                                     )  No. CR-00-0360-AP
                         Appellee,   )
                                     )  Mohave County Superior
              v.                     )  Court
                                     )  No. CR-98-838
MICHAEL GENE BLAKLEY,                )
                                     )  CONSOLIDATED WITH
                         Appellant.  )
                                     )
_____)
                                     )
STATE OF ARIZONA,                    )  Arizona Supreme Court
                                     )  No. CR-00-0447-AP
                         Appellee,   )
                                     )  Maricopa County Superior
              v.                     )  Court
                                     )  No. CR1997-011695
HENRY WILLIAM HALL,                  )
                                     )  CONSOLIDATED WITH
                         Appellant.  )
                                     )
_____)
                                     )
STATE OF ARIZONA,                    )  Arizona Supreme Court
                                     )  No. CR-01-0275-AP
                         Appellee,   )
                                     )  Maricopa County Superior
              v.                     )  Court
                                     )  No. CR1999-095294
SHAWN RYAN GRELL,                    )
                                     )  CONSOLIDATED WITH
                         Appellant.  )
                                     )
_____)
                                     )
STATE OF ARIZONA,                    )  Arizona Supreme Court
                                     )  No. CR-00-0508-AP
                         Appellee,   )
                                     )  Mohave County Superior
              v.                     )  Court
                                     )  No. CR-98-1243
JAMES EDWARD DAVOLT, II,             )
                                     )  CONSOLIDATED WITH
                         Appellant.  )
                                     )
_____)
```

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-00-0544-AP |
| Appellee, | |
| v. | Maricopa County Superior Court No. CR97-03949 |
| LEROY D. CROPPER, | |
| Appellant. | CONSOLIDATED WITH |

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-00-0595-AP |
| Appellee, | |
| v. | Pima County Superior Court No. CR-61846 |
| SHAD DANIEL ARMSTRONG, | |
| Appellant. | CONSOLIDATED WITH |

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-01-0091-AP |
| Appellee, | |
| v. | Maricopa County Superior Court No. CR1999-015293 |
| EUGENE ROBERT TUCKER, | |
| Appellant. | CONSOLIDATED WITH |

| | |
|---|---|
| STATE OF ARIZONA, | Arizona Supreme Court No. CR-01-0100-AP |
| Appellee, | |
| v. | Pima County Superior Court No. CR-64663 |
| KAJORNSAK PRASERTPHONG, | |
| Appellant. | CONSOLIDATED WITH |

3

```
                                 )
STATE OF ARIZONA,                )  Arizona Supreme Court
                                 )  No. CR-01-0103-AP
                  Appellee,      )
                                 )  Pima County Superior
          v.                     )  Court
                                 )  No. CR-64663
CHRISTOPHER BO HUERSTEL,         )
                                 )  CONSOLIDATED WITH
                  Appellant.     )
                                 )
_____)
                                 )
STATE OF ARIZONA,                )  Arizona Supreme Court
                                 )  No. CR-01-0129-AP
                  Appellee,      )
                                 )  Maricopa County Superior
          v.                     )  Court
                                 )  No. CR1997-05555
SHERMAN LEE RUTLEDGE,            )
                                 )
                  Appellant.     )
                                 )
_____)
                                 )
STATE OF ARIZONA,                )  Arizona Supreme Court
                                 )  No. CR-01-0270-AP
                  Appellee,      )
                                 )  Maricopa County Superior
          v.                     )  Court
                                 )  No. CR1996-011714
CHRISTOPHER GEORGE THEODORE      )
LAMAR,                           )
                                 )  CONSOLIDATED WITH
                  Appellant.     )
                                 )
_____)
                                 )
STATE OF ARIZONA,                )  Arizona Supreme Court
                                 )  No. CR-01-0421-AP
                  Appellee,      )
                                 )  Maricopa County Superior
          v.                     )  Court
                                 )  No. CR1995-006472
MICHAEL JOE MURDAUGH (A),        )
                                 )  CONSOLIDATED WITH
                  Appellant.     )
                                 )
```

4

```
_____)
                                       )
STATE OF ARIZONA,                      )  Arizona Supreme Court
                                       )  No. CR-02-0042-AP
                       Appellee,       )
                                       )  Maricopa County Superior
             v.                        )  Court
                                       )  No. CR-1999-003536
BRIAN JEFFREY DANN,                    )
                                       )  CONSOLIDATED WITH
                      Appellant.       )
                                       )
_____)
                                       )
STATE OF ARIZONA,                      )  Arizona Supreme Court
                                       )  No. CR-02-0044-AP
                       Appellee,       )
                                       )  Pima County Superior
             v.                        )  Court
                                       )  No. CR-43804
ROBERT JOE MOODY,                      )
                                       )  CONSOLIDATED WITH
                      Appellant.       )
                                       )
_____)
                                       )
STATE OF ARIZONA,                      )  Arizona Supreme Court
                                       )  No. CR-99-0296-AP
                       Appellee,       )
                                       )  Pima County Superior
             v.                        )  Court
                                       )  No. CR-61452
KEITH ROYAL PHILLIPS,                  )
                                       )  CONSOLIDATED WITH
                      Appellant.       )
                                       )
_____)
                                       )
STATE OF ARIZONA,                      )  Arizona Supreme Court
                                       )  No. CR-99-0551-AP
                       Appellee,       )
                                       )  Pima County Superior
             v.                        )  Court
                                       )  No. CR-61452
MARCUS LASALLE FINCH,                  )
                                       )  CONSOLIDATED WITH
                      Appellant.       )
                                       )
```

5

```
_____)
                                        )
STATE OF ARIZONA,                       )  Arizona Supreme Court
                                        )  No. CR-99-0438-AP
                    Appellee,           )
                                        )  Maricopa County Superior
          v.                            )  Court
                                        )  No. CR-98-003520
JOHN EDWARD SANSING,                    )
                                        )  CONSOLIDATED WITH
                    Appellant.          )
                                        )
_____)
                                        )
STATE OF ARIZONA,                       )  Arizona Supreme Court
                                        )  No. CR-98-0289-AP
                    Appellee,           )
                                        )  Maricopa County Superior
          v.                            )  Court
                                        )  No. CR-95-09046
JAMES CORNELL HARROD,                   )
                                        )  CONSOLIDATED WITH
                    Appellant.          )
                                        )
_____)
                                        )
STATE OF ARIZONA,                       )  Arizona Supreme Court
                                        )  No.  CR-98-0376-AP
                    Appellee,           )
                                        )  Maricopa County Superior
          v.                            )  Court
                                        )  No.  CR-93-08116
DARREL PETER PANDELI aka DARREL         )
PETER FLORIAN,                          )
                                        )  CONSOLIDATED WITH
                    Appellant.          )
                                        )
_____)
                                        )
STATE OF ARIZONA,                       )  Arizona Supreme Court
                                        )  No. CR-97-0317-AP
                    Appellee,           )
                                        )  Maricopa County Superior
          v.                            )  Court
                                        )  No. CR 92-05731
SCOTT ALAN LEHR,                        )
                                        )  CONSOLIDATED WITH
                    Appellant.          )
```

6

```
                                  )
_____)
                                  )
STATE OF ARIZONA,                 )   Arizona Supreme Court
                                  )   No. CR-98-0488-AP
                    Appellee,     )
                                  )   Pinal County Superior
              v.                  )   Court
                                  )   No. CR-96-021235
ARTURO ANDA CAÑEZ,                )
                                  )   CONSOLIDATED WITH
                    Appellant.    )
                                  )
_____)
                                  )
STATE OF ARIZONA,                 )   Arizona Supreme Court
                                  )   No. CR-97-0349-AP
                    Appellee,     )
                                  )   Maricopa County Superior
              v.                  )   Court
                                  )   Nos. CR-94-11396
AARON SCOTT HOSKINS,              )   and CR-94-11397
                                  )   (Consolidated)
                                  )
                    Appellant.    )   CONSOLIDATED WITH
                                  )
_____)
                                  )
STATE OF ARIZONA,                 )   Arizona Supreme Court
                                  )   No. CR-98-0278-AP
                    Appellee,     )
                                  )   Pima County Superior
              v.                  )   Court
                                  )   No. CR-55947
SCOTT DOUGLAS NORDSTROM,          )
                                  )
                    Appellant.    )
                                  )   **O P I N I O N**
_____)
```

Appeal from the Superior Court of Maricopa County
No. CR-95-01754(A)
The Honorable Gregory H. Martin, Judge

_____

Janet A. Napolitano, Arizona Attorney General          Phoenix
     by   Kent E. Cattani, Chief Counsel,

7

Capital Litigation Section
and  Robert L. Ellman, Assistant Attorney General
and  James P. Beene, Assistant Attorney General
and  John P. Todd, Assistant Attorney General
and  Bruce M. Ferg, Assistant Attorney General       Tucson
Attorneys for State of Arizona

Osborn Maledon, P.A.                                 Phoenix
    by   Andrew D. Hurwitz
    and  John A. Stookey
    and  Daniel L. Kaplan
Attorneys for Timothy Stuart Ring

Drinker Biddle & Reath, L.L.P.                   Philadelphia
    by   Lawrence J. Fox
    and
Quarles & Brady Streich Lang, L.L.P.                 Phoenix
    by   Edward F. Novak
Attorneys for *Amici Curiae* Legal Ethicists and
The Stein Center for Law and Ethics

---

Appeal from the Superior Court of Maricopa County
No. CR-96-04691
The Honorable Stephen A. Gerst, Judge

---

Janet A. Napolitano, Arizona Attorney General        Phoenix
    by    Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
    and  Robert L. Ellman, Assistant Attorney General
    and  James P. Beene, Assistant Attorney General
    and  John P. Todd, Assistant Attorney General
    and  Bruce M. Ferg, Assistant Attorney General       Tucson
Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender        Phoenix
    by    Stephen R. Collins
    and  Edward F. McGee
Attorneys for Antoin Jones

---

Appeal from the Superior Court of Pima County
No. CR-58016
The Honorable Deborah J. S. Ward, Judge Pro Tempore

---

Janet A. Napolitano, Arizona Attorney General        Phoenix

        by   Kent E. Cattani, Chief Counsel,
             Capital Litigation Section
        and  Robert L. Ellman, Assistant Attorney General
        and  James P. Beene, Assistant Attorney General
        and  John P. Todd, Assistant Attorney General
        and  Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Law Offices of Carla Ryan                                  Tucson
        by   Carla Ryan
Attorneys for Danny N. Montaño

---

Appeal from the Superior Court of Maricopa County
No. CR 98-04885
The Honorable Michael R. McVey, Judge

---

Janet A. Napolitano, Arizona Attorney General              Phoenix
        by   Kent E. Cattani, Chief Counsel,
             Capital Litigation Section
        and  Robert L. Ellman, Assistant Attorney General
        and  James P. Beene, Assistant Attorney General
        and  John P. Todd, Assistant Attorney General
        and  Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender             Phoenix
        by   James L. Edgar
        and  Charles R. Krull
Attorneys for Wayne Benoit Prince

---

Appeal from the Superior Court of Mohave County
No. CR-98-838
The Honorable Steven F. Conn, Judge

---

Janet A. Napolitano, Arizona Attorney General              Phoenix
        by   Kent E. Cattani, Chief Counsel,
             Capital Litigation Section
        and  Robert L. Ellman, Assistant Attorney General
        and  James P. Beene, Assistant Attorney General
        and  John P. Todd, Assistant Attorney General
        and  Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Baran Law Office, Ltd.                                     Overgaard

9

        by    J. Conrad Baran
Attorney for Michael Gene Blakley

_____

        Appeal from the Superior Court of Maricopa County
                        No. CR1997-011695
                The Honorable Thomas W. O'Toole, Judge

_____

Janet A. Napolitano, Arizona Attorney General          Phoenix
        by    Kent E. Cattani, Chief Counsel,
                Capital Litigation Section
        and   Robert L. Ellman, Assistant Attorney General
        and   James P. Beene, Assistant Attorney General
        and   John P. Todd, Assistant Attorney General
        and   Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Thomas A. Gorman                                       Flagstaff
Attorney for Henry William Hall

_____

        Appeal from the Superior Court of Maricopa County
                        No. CR1999-095294
                The Honorable Barbara M. Jarrett, Judge

_____

Janet A. Napolitano, Arizona Attorney General          Phoenix
        by    Kent E. Cattani, Chief Counsel,
                Capital Litigation Section
        and   Robert L. Ellman, Assistant Attorney General
        and   James P. Beene, Assistant Attorney General
        and   John P. Todd, Assistant Attorney General
        and   Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Shughart Thomson Kilroy Goodwin Raup, P.C.             Phoenix
        by    Rudolph J. Gerber
        and
James J. Haas, Maricopa County Public Defender         Phoenix
        by    James R. Rummage
        and   Lawrence S. Matthew
Attorneys for Shawn Ryan Grell

_____

        Appeal from the Superior Court of Mohave County
                        No. CR-98-1243
                The Honorable Steven F. Conn, Judge

Janet A. Napolitano, Arizona Attorney General      Phoenix
    by   Kent E. Cattani, Chief Counsel,
        Capital Litigation Section
    and  Robert L. Ellman, Assistant Attorney General
    and  James P. Beene, Assistant Attorney General
    and  John P. Todd, Assistant Attorney General
    and  Bruce M. Ferg, Assistant Attorney General    Tucson
Attorneys for State of Arizona

Julie Hall    Tucson
    and
Arizona Capital Representation Project    Tucson
    by   Jennifer Bedier
Attorneys for James Edward Davolt, II

Appeal from the Superior Court of Maricopa County
No. CR97-03949
The Honorable David R. Cole, Judge

Janet A. Napolitano, Arizona Attorney General      Phoenix
    by   Kent E. Cattani, Chief Counsel,
        Capital Litigation Section
    and  Robert L. Ellman, Assistant Attorney General
    and  James P. Beene, Assistant Attorney General
    and  John P. Todd, Assistant Attorney General
    and  Bruce M. Ferg, Assistant Attorney General    Tucson
Attorneys for State of Arizona

Thomas A. Gorman    Flagstaff
    and
David I. Goldberg    Flagstaff
Attorneys for Leroy D. Cropper

Appeal from the Superior Court of Pima County
No. CR-61846
The Honorable Howard Hantman, Judge

Janet A. Napolitano, Arizona Attorney General      Phoenix
    by   Kent E. Cattani, Chief Counsel,
        Capital Litigation Section
    and  Robert L. Ellman, Assistant Attorney General
    and  James P. Beene, Assistant Attorney General
    and  John P. Todd, Assistant Attorney General

          and  Bruce M. Ferg, Assistant Attorney General          Tucson
Attorneys for State of Arizona

Law Offices of Harriette P. Levitt                             Tucson
     by  Harriette P. Levitt
Attorneys for Shad Daniel Armstrong

---

Appeal from the Superior Court of Maricopa County
No. CR1999-015293
The Honorable Michael D. Jones, Judge

---

Janet A. Napolitano, Arizona Attorney General            Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General          Tucson
Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender           Phoenix
     by   Christopher V. Johns
     and  James H. Kemper
Attorneys for Eugene Robert Tucker

---

Appeal from the Superior Court of Pima County
No. CR-64663
The Honorable Michael Brown, Judge

---

Janet A. Napolitano, Arizona Attorney General            Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General          Tucson
Attorneys for State of Arizona

Susan A. Kettlewell, Pima County Public Defender          Tucson
     by   Rebecca A. McLean
     and  Lori J. Lefferts
Attorneys for Kajornsak Prasertphong

---

Appeal from the Superior Court of Pima County
No. CR-64663
The Honorable Michael Brown, Judge

---

Janet A. Napolitano, Arizona Attorney General          Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Law Offices of Williamson & Young, P.C.               Tucson
     by   S. Jonathan Young
Attorney for Christopher Bo Huerstel

---

Appeal from the Superior Court of Maricopa County
No. CR1997-05555
The Honorable Frank T. Galati, Judge

---

Janet A. Napolitano, Arizona Attorney General          Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Robert Doyle                                          Phoenix
Attorney for Sherman Lee Rutledge

---

Appeal from the Superior Court of Maricopa County
No. CR1996-011714
The Honorable Stephen A. Gerst, Judge

---

Janet A. Napolitano, Arizona Attorney General          Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General

13

and Bruce M. Ferg, Assistant Attorney General          Tucson
Attorneys for State of Arizona

Susan Sherwin, Maricopa County
Office of Legal Advocate                               Phoenix
     by   Brent Graham
Attorneys for Christopher George Theodore Lamar

---

Appeal from the Superior Court of Maricopa County
                No. CR1995-006472
          The Honorable Sherry Hutt, Judge

---

Janet A. Napolitano, Arizona Attorney General         Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General    Tucson
Attorneys for State of Arizona

Michael S. Reeves                                      Phoenix
Attorney for Michael Joe Murdaugh

---

Appeal from the Superior Court of Maricopa County
                No. CR 1999-003536
          The Honorable H. Jeffrey Coker, Judge

---

Janet A. Napolitano, Arizona Attorney General         Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General    Tucson
Attorneys for State of Arizona

Susan Sherwin, Maricopa County
Office of Legal Advocate                               Phoenix
     by   Brent Graham
     and
Shughart Thomson Kilroy Goodwin Raup, P.C.            Phoenix
     by   Rudolph J. Gerber
Attorneys for Brian Jeffrey Dann

14

Appeal from the Superior Court of Pima County
No. CR-43804
The Honorable Michael Cruikshank, Judge

---

Janet A. Napolitano, Arizona Attorney General          Phoenix
    by    Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
    and   Robert L. Ellman, Assistant Attorney General
    and   James P. Beene, Assistant Attorney General
    and   John P. Todd, Assistant Attorney General
    and   Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Susan A. Kettlewell, Pima County Public Defender       Tucson
    by    Frank P. Leto
    and   Brian X. Metcalf
Attorneys for Robert Joe Moody

---

Appeal from the Superior Court of Pima County
No. CR-61452
The Honorable Bernardo P. Velasco, Judge

---

Janet A. Napolitano, Arizona Attorney General          Phoenix
    by    Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
    and   Robert L. Ellman, Assistant Attorney General
    and   James P. Beene, Assistant Attorney General
    and   John P. Todd, Assistant Attorney General
    and   Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona

Susan A. Kettlewell, Pima County Public Defender       Tucson
    by    John F. Palumbo
    and   Rebecca A. McLean
Attorneys for Keith Royal Phillips

---

Appeal from the Superior Court of Pima County
No. CR-61452
The Honorable Bernardo P. Velasco, Judge

---

Janet A. Napolitano, Arizona Attorney General          Phoenix
    by    Kent E. Cattani, Chief Counsel,
          Capital Litigation Section

    and  Robert L. Ellman, Assistant Attorney General  
    and  James P. Beene, Assistant Attorney General  
    and  John P. Todd, Assistant Attorney General  
    and  Bruce M. Ferg, Assistant Attorney General     Tucson  
Attorneys for State of Arizona

Law Offices of Williamson & Young, P.C.     Tucson  
    by   S. Jonathan Young  
Attorneys for Marcus LaSalle Finch

---

Appeal from the Superior Court of Maricopa County  
No. CR 98-003520  
The Honorable Ronald S. Reinstein, Judge

---

Janet A. Napolitano, Arizona Attorney General     Phoenix  
    by   Kent E. Cattani, Chief Counsel,  
        Capital Litigation Section  
    and  Robert L. Ellman, Assistant Attorney General  
    and  James P. Beene, Assistant Attorney General  
    and  John P. Todd, Assistant Attorney General  
    and  Bruce M. Ferg, Assistant Attorney General     Tucson  
Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender     Phoenix  
    by   Terry J. Adams  
    and  Spencer D. Heffel  
Attorneys for John Edward Sansing

---

Appeal from the Superior Court of Maricopa County  
No. CR-95-09046  
The Honorable Ronald S. Reinstein, Judge

---

Janet A. Napolitano, Arizona Attorney General     Phoenix  
    by   Kent E. Cattani, Chief Counsel,  
        Capital Litigation Section  
    and  Robert L. Ellman, Assistant Attorney General  
    and  James P. Beene, Assistant Attorney General  
    and  John P. Todd, Assistant Attorney General  
    and  Bruce M. Ferg, Assistant Attorney General     Tucson  
Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender     Phoenix  
    by   Christopher V. Johns  
    and  James H. Kemper

Attorneys for James Cornell Harrod

---

Appeal from the Superior Court of Maricopa County
No. CR-93-08116
The Honorable Gregory H. Martin, Judge

---

Janet A. Napolitano, Arizona Attorney General        Phoenix
    by   Kent E. Cattani, Chief Counsel,
        Capital Litigation Section
    and  Robert L. Ellman, Assistant Attorney General
    and  James P. Beene, Assistant Attorney General
    and  John P. Todd, Assistant Attorney General
    and  Bruce M. Ferg, Assistant Attorney General    Tucson
Attorneys for State of Arizona

Julie Hall        Tucson
    and
Arizona Capital Representation Project        Tucson
    by   Jennifer Bedier
Attorneys for Darrel Peter Pandeli aka
Darrel Peter Florian

---

Appeal from the Superior Court of Maricopa County
No. CR 92-05731
The Honorable Stephen A. Gerst, Judge

---

Janet A. Napolitano, Arizona Attorney General        Phoenix
    by   Kent E. Cattani, Chief Counsel,
        Capital Litigation Section
    and  Robert L. Ellman, Assistant Attorney General
    and  James P. Beene, Assistant Attorney General
    and  John P. Todd, Assistant Attorney General
    and  Bruce M. Ferg, Assistant Attorney General    Tucson
Attorneys for State of Arizona

Stephen M. Johnson        Phoenix
Attorney for Scott Alan Lehr

---

Appeal from the Superior Court of Pinal County
No. CR-96-021235
The Honorable Boyd T. Johnson, Judge

---

Janet A. Napolitano, Arizona Attorney General                    Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General         Tucson
Attorneys for State of Arizona

Thomas J. Phalen                                                 Phoenix
     and
Tara K. Allen                                                    Tempe
Attorneys for Arturo Anda Cañez

---

Appeal from the Superior Court of Maricopa County
Nos. CR-94-11396 and CR-94-11397 (Consolidated)
The Honorable Jeffrey A. Hotham, Judge

---

Janet A. Napolitano, Arizona Attorney General                    Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General         Tucson
Attorneys for State of Arizona

Denise Young                                                     Tucson
     and
Arizona Capital Representation Project                           Tucson
     by   Jennifer Bedier
Attorneys for Aaron Scott Hoskins

---

Appeal from the Superior Court of Pima County
No. CR-55947
The Honorable Michael Cruikshank, Judge Pro Tempore

---

Janet A. Napolitano, Arizona Attorney General                    Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General         Tucson

Attorneys for State of Arizona

Law Office of David Alan Darby                                    Tucson
     by David Alan Darby
Attorney for Scott Douglas Nordstrom

---

M c G R E G O R, Vice Chief Justice

¶1        This case comes to us on remand from the United States

Supreme Court, *Ring v. Arizona*, 536 U.S. 584, ___, 122 S. Ct. 2428,

2443 (2002) (*Ring II*).   We have jurisdiction pursuant to the

Arizona Constitution, Article VI, Section 5.3.

## I.

### Facts and Procedural History.

¶2        On December 6, 1996, a jury convicted Timothy Stuart Ring

of first degree murder, conspiracy to commit armed robbery, armed

robbery, burglary and theft.   Under Arizona law at the time of

Ring's sentencing, capital sentencing followed the procedure set

forth at Arizona Revised Statutes (A.R.S.) section 13-703 (Supp.

1996).   As required by A.R.S. section 13-703.B, the trial court

conducted a sentencing hearing to consider aggravating and

mitigating circumstances.   The court could consider only those

aggravating factors identified by statute, but could consider any

possible     mitigating     factor.[1]        A.R.S.     §     13-

---

[1]    The state must prove aggravating factors beyond a
reasonable doubt.   A.R.S. § 13-703.B (Supp. 2002); *State v.
Spreitz*, 190 Ariz. 129, 147, 945 P.2d 1260, 1278 (1997).
Mitigating factors must be proved by a preponderance of the
evidence.  A.R.S. § 13-703.C; *State v. Pandeli*, 200 Ariz. 365, 376

19

703.F–.G, *amended by* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1. After the hearing, the court found two aggravating factors: Ring committed the murder for pecuniary gain, A.R.S. section 13-703.F.5, and "in an especially heinous, cruel or depraved manner," A.R.S. section 13-703.F.6. *State v. Ring*, 200 Ariz. 267, 272 ¶ 13, 25 P.3d 1139, 1144 (2001) (*Ring I*). The trial court concluded that the mitigating circumstance of Ring's minimal criminal record was not "sufficiently substantial to call for leniency" and sentenced Ring to death. *Id*. at 273 ¶ 13, 25 P.3d at 1145; *see* A.R.S. § 13-703.E, *amended by* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

¶3 Ring subsequently filed a direct appeal to this court seeking review of multiple trial and sentencing issues, including a Sixth Amendment challenge to Arizona's capital sentencing procedure. The Sixth Amendment right to a jury trial, Ring argued, requires a jury, rather than a judge, to find the aggravating factors set forth at section 13-703.F. *Ring I,* 200 Ariz. at 278 ¶ 40, 25 P.3d at 1150. This court affirmed Ring's first degree murder conviction and death sentence. *Id*. at 284 ¶ 65, 25 P.3d at

---

¶ 44, 26 P.3d 1136, 1147 (2001).
    Except for one brief period, aggravating circumstances have been codified at A.R.S. section 13-703.F since the legislature enacted judge-based sentencing. Following the 2001 Arizona Legislative Session, these aggravating circumstances are listed under A.R.S. section 13-703.G. 2001 Ariz. Sess. Laws ch. 260, § 1. The legislature redesignated aggravating circumstances under subsection .F in its post-*Ring II* amendments. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

1156.  Guided by the United States Supreme Court's decision in *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047 (1990), we held Arizona's capital sentencing procedure did not violate the Sixth Amendment of the United States Constitution.  *Ring I*, 200 Ariz. at 279-80 ¶ 44, 25 P.3d at 1151-52.

¶4	Ring petitioned the United States Supreme Court to accept *certiorari*.  The Court granted review and held that Arizona's capital sentencing scheme violated the Sixth Amendment right to a jury trial, overruling *Walton* and applying the approach of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).  *Ring II*, 536 U.S. at ___, 122 S. Ct. at 2443.  The Supreme Court remanded the matter for disposition in light of *Ring II.*

¶5	At the time of the *Ring II* decision, thirty-one defendants sentenced to death had matters pending on direct appeal before this court.  On June 27, 2002, we entered an order consolidating all thirty-one death penalty cases then on direct appeal.  *State v. Ring*, Order No. CR-97-0428-AP (June 27, 2002).

¶6	All defendants in this consolidated case either pled guilty to or were convicted by a jury of first degree premeditated or felony murder.  Trial judges sentenced all defendants to death under a now-superseded version of A.R.S. section 13-703, under which a judge considered aggravating and mitigating evidence. This court must now examine the impact of *Ring II* on the death sentences of those defendants before us.  To assist the court, and after

21

consultation with counsel for the State and the defendants, we ordered the parties to brief the issues discussed below. We reserved to each defendant the right to further brief sentencing issues, if necessary. This opinion addresses those issues raised in the consolidated appeal. The court will address each defendant's sentencing issues in a separate opinion.

## II.

### Historical Overview of Capital Punishment in Arizona.

¶7        Under Arizona's first penal code, a person convicted of first degree murder received either a death or prison sentence.[2] Revised Statutes of Arizona, Penal Code § 173 (1913). The jury, exercising its discretion, decided which punishment to impose. *Id.* In 1918, voters approved an initiative measure giving the trial judge authority to sentence a person to death for first degree murder in cases in which the defendant pled guilty. 1919 Ariz. Sess. Laws, Initiative & Referendum Measures 17, 18. In those cases, the trial court exercised the same discretion as did a jury. Thus, until the early 1970s, Arizona imposed the death penalty for first degree murder at the sole discretion of the jury or court. *E.g.,* Ariz. Code § 43-2903 (1939); Ariz. Code § 4585 (1928); *State v. McGee*, 91 Ariz. 101, 111-12, 370 P.2d 261, 268 (1962) ("The

---

[2]        In addition to first degree murder, offenses punishable by death included treason, Revised Statutes of Arizona, Penal Code section 33 (1913), train robbery, *id*. sections 435, 438, and deadly assault by a felon serving a life sentence, *id*. section 220.

22

determination of punishment is wholly within the discretion of the jury upon their consideration of all aspects of the case."), *superseded by statute as stated in State v. Lopez*, 163 Ariz. 108, 115, 786 P.2d 959, 966 (1990); *Hernandez v. State*, 43 Ariz. 424, 429, 32 P.2d 18, 20 (1934) ("[T]he question of punishment in first degree murder cases is wholly within the jury's discretion . . . ."). No statutory standards guided the determination of punishment.

¶8        In 1972, however, the United States Supreme Court decided *Furman v. Georgia* and held that standardless death sentencing procedures violate the Eighth Amendment's prohibition of cruel and unusual punishment. 408 U.S. 238, 239-40, 92 S. Ct. 2726, 2727 (1972) (per curiam). According to Justice Stewart, complete jury discretion led to arbitrary and capricious imposition of the death sentence; given strikingly similar crimes, some defendants received a death sentence and others did not. *Id.* at 309-10, 92 S. Ct. at 2762 (Stewart, J., concurring).

¶9        Following the *Furman* decision, the Arizona Legislature enacted a new capital sentencing scheme. 1973 Ariz. Sess. Laws ch. 138. The legislation divided a capital first degree murder trial into two phases: a guilt phase and a sentencing phase. Upon a jury conviction of or a guilty plea to first degree murder, the statutes required the trial court to hold a sentencing hearing at which the state and defendant presented evidence of statutorily defined

23

aggravating and mitigating factors.[3] *Id.* § 5. The trial court could impose the death sentence if it found at least one aggravating circumstance and "no mitigating circumstances sufficiently substantial to call for leniency." *Id.*

¶10 Three years later, in *Gregg v. Georgia*, the Supreme Court upheld Georgia's revised sentencing scheme against a claim that the death penalty was *per se* unconstitutional. 428 U.S. 153, 169, 96 S. Ct. 2909, 2923 (1976). The Georgia statute resembled Arizona's, except that, under Georgia law, the same jury heard both the guilt and sentencing phases. *See id*. at 164 & n.9, 96 S. Ct. at 2921 & n.9.

¶11 The Supreme Court reviewed Arizona's judge-only sentencing in *Walton*. The Court rejected an argument that the Sixth Amendment right to a jury trial required a jury, not a judge, to find the facts presented at the sentencing hearing. *Walton*, 497 U.S. at 649, 110 S. Ct. at 3055. In *Apprendi*, a non-capital case decided ten years later, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

---

[3] In 1978, the Supreme Court held unconstitutional those death penalty sentencing statutes limiting the types of mitigating evidence a defendant can introduce. *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65 (1978); *Bell v. Ohio*, 438 U.S. 637, 642, 98 S. Ct. 2977, 2980-81 (1978). This court subsequently held unconstitutional Arizona's exclusion of non-statutory mitigating circumstances. *State v. Watson*, 120 Ariz. 441, 445, 586 P.2d 1253, 1257 (1978). In 1979, the Arizona Legislature amended the mitigating circumstances statute to conform with these decisions. 1979 Ariz. Sess. Laws ch. 144, § 1.

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. Although Justice O'Connor's *Apprendi* dissent questioned whether *Walton* could survive the *Apprendi* ruling, *id.* at 537, 120 S. Ct. at 2387-88 (O'Connor, J., dissenting), the majority distinguished capital cases as "not controlling" authority. *Id.* at 496-97, 120 S. Ct. at 2366.

¶12 Finally, in *Ring II*, the Supreme Court expressly overruled *Walton* in favor of *Apprendi*'s Sixth Amendment approach. 536 U.S. at ___, 122 S. Ct. at 2443. According to the Court, "[b]ecause Arizona's enumerated aggravating factors operate as the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury." *Id.* (quoting *Apprendi*, 530 U.S. at 494 n.19, 120 S. Ct. at 2365 n.19). "Capital defendants, no less than non-capital defendants," the Court concluded, "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at ___, 122 S. Ct. at 2432. Thus, any fact necessary to enhance the defendant's sentence beyond that authorized by the jury's guilty verdict must be found by the jury.

¶13 Following the Supreme Court's announcement of the *Ring II* decision, Governor Jane Dee Hull called a special legislative session to revise Arizona's capital sentencing provisions. On August 1, 2002, the legislature passed and Governor Hull signed

into law Senate Bill ("S.B.") 1001, containing several revisions intended to conform Arizona law to the *Ring II* mandate. S.B. 1001, 45th Leg., 5th Spec. Sess. (Ariz. 2002). Under Arizona's amended sentencing procedure, the jury serving during the guilt phase of the trial also serves as the trier of fact during the sentencing phase. A.R.S. § 13-703.01.C–.D (Supp. 2002). Specifically, the jury will find and consider the effect of aggravating and mitigating circumstances and decide whether the defendant should receive a sentence of death. *Id.* § 13-703.01.D.

¶14    To determine whether we should vacate defendants' death sentences and either reduce to a life sentence or remand for resentencing under Arizona's revised procedure, we consider the following issues.

### III.

### Does the Ex Post Facto Clause Prohibit Resentencing Under Arizona's Amended Capital Sentencing Procedure?

¶15    The defendants argue that resentencing under A.R.S. sections 13-703 and 13-703.01 (Supp. 2002) (the new sentencing statutes) would constitute an ex post facto violation under the United States Constitution, Article I, Section 10, Clause 1, and the Arizona Constitution, Article II, Section 25. We disagree.[4]

---

[4]    In *State v. Noble*, we held that we will interpret the state Ex Post Facto Clause in accord with federal precedent. 171

26

¶16     The ex post facto doctrine prohibits a state from "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990). In *Dobbert v. Florida*, the Supreme Court held that ex post facto prohibitions reach only those legislative enactments that affect substantive criminal law. 432 U.S. 282, 292, 97 S. Ct. 2290, 2298 (1977). Likewise, we recently held that, under the United States and Arizona Constitutions, "[a]n *ex post facto* law is one that increases the punishment or aggravates any crime previously committed." *Zuther v. State*, 199 Ariz. 104, 111 ¶ 26, 14 P.3d 295, 302 (2000) (holding legislative amendment changing statutory computation of prisoner "gate money" not an ex post facto law because legislative purpose was not punitive).

¶17     In *Dobbert*, the Supreme Court restated the categories of laws constituting substantive changes to criminal law:

> [A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.

432 U.S. at 292, 97 S. Ct. at 2298 (quoting *Beazell v. Ohio*, 269

---

Ariz. 171, 173, 829 P.2d 1217, 1219 (1992). We find no reason to deviate from *Noble*.

U.S. 167, 169-70, 46 S. Ct. 68, 68 (1925)). Thus, a legislative act affecting changes in criminal procedure, including procedural changes that disadvantage a defendant, generally does not violate the Ex Post Facto Clause. *Collins*, 497 U.S. at 45, 110 S. Ct. at 2720 ("[Procedural] refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes."); *State v. Mendoza*, 170 Ariz. 184, 193, 823 P.2d 51, 60 (1992) ("A defendant has no vested right in any particular mode of procedure.").

¶18 The question before us, then, is whether Arizona's new sentencing statutes worked a substantive or procedural change in the law as it existed when these murders took place. We regard three decisions as particularly instructive.

¶19 In *Dobbert*, the defendant argued that his death sentence violated the Ex Post Facto Clause. Dobbert killed his children in 1972. At that time, Florida mandated a death sentence for capital felony convictions unless the jury, in its discretion, recommended mercy to the judge. *Dobbert*, 432 U.S. at 287, 97 S. Ct. at 2295. Shortly after Dobbert murdered his children, the Supreme Court decided *Furman v. Georgia*, striking down the Georgia death sentencing statute as unconstitutional. *Id*. at 288, 97 S. Ct. at 2296. A month later, in *Donaldson v. Sack*, the Florida Supreme Court held the Florida death sentencing statute unconstitutional

28

under *Furman*. 265 So. 2d 499, 501 (Fla. 1972). Later that year, the Florida Legislature amended the state's capital sentencing procedure to comply with *Furman* and *Donaldson*. *Dobbert*, 432 U.S. at 288, 97 S. Ct. at 2296. Dobbert was then tried and sentenced to death under the state's new law. *Id.* at 284, 97 S. Ct. at 2294.

¶20 Dobbert failed to persuade the Supreme Court that sentencing him under the amended procedures violated the Ex Post Facto Clause. The Court first limited ex post facto violations to those occurring when a statute makes criminal a previously innocent act, aggravates a crime previously committed, provides greater punishment, or changes the quantum of proof needed to convict a defendant. *Id*. at 292, 97 S. Ct. at 2298 (quoting *Beazell*, 269 U.S. at 169-70, 46 S. Ct. at 68). None of those categories applied to the Florida statute. Instead, the Court concluded, the statutory change between the two sentencing methods was "clearly procedural," and "[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Id.* at 293-94, 97 S. Ct. at 2298.

¶21 The Supreme Court also rejected an Ex Post Facto Clause challenge in *Collins v. Youngblood*, a non-death penalty case. The jury had imposed a prison sentence and a fine, the latter not authorized by law. 497 U.S. at 39, 110 S. Ct. at 2717. The Texas

29

Court of Criminal Appeals reformed the sentence under a statute enacted after the defendant's criminal act took place. *Id*. at 40, 110 S. Ct. at 2718. The Supreme Court held that applying the sentence reform statute in the defendant's case did not violate the Ex Post Facto Clause because although the Sixth Amendment right to a jury trial is substantial, "it is not a right that has anything to do with the definition of crimes, defenses, or punishments." *Id.* at 51-52, 110 S. Ct. at 2724 (overruling *Thompson v. Utah*, 170 U.S. 343, 18 S. Ct. 620 (1898)).

¶22    In *State v. Correll*, in contrast, we found a violation of the Ex Post Facto Clause. 148 Ariz. 468, 482, 715 P.2d 721, 735 (1986), *rev'd in part on other grounds by Correll v. Stewart*, 137 F.3d 1404 (9th Cir. 1998). A jury convicted the defendant of three counts of first degree murder. After the murders, but before sentencing, the legislature amended A.R.S. section 13-703.F to add multiple homicide convictions as an aggravating circumstance. We held that retroactively applying the new aggravating circumstance constituted a substantive change to capital murder and disadvantaged the defendant. *Id*. This change affected the substantive nature of the crime and sentencing by adding a new element that, if present, permitted the defendant to receive a more severe punishment than that available at the time of the crime.[5]

---

[5]    The Supreme Court's holding that aggravating factors serve as the functional equivalent of elements of the first degree murder offense makes this conclusion even more evident. *Ring II*,

¶23 These cases clearly indicate not only that ex post facto principles generally do not bar applying procedural changes to criminal proceedings, but also that the general framework of a state's statutory capital sentencing scheme is procedural in nature. As *Collins* established, rights secured by the Sixth Amendment jury trial right, the right at issue here, are inherently procedural. 497 U.S. at 51, 110 S. Ct. at 2724. Under the holding of *Dobbert*, Arizona's change in the statutory method for imposing capital punishment is clearly procedural: The new sentencing statutes alter the method used to determine whether the death penalty will be imposed but make no change to the punishment attached to first degree murder. The new sentencing statutes added no new element, or functional equivalent of an element, to first degree murder.[6] *Correll*, 148 Ariz. at 481-82, 715 P.2d at 734-35. Hence, the changes to the state's capital sentencing procedures do not resemble the type of after-the-fact legislative evil contemplated by contemporary understandings of the ex post facto doctrine.

¶24 Even a procedural change amounts to an ex post facto violation, however, when it affects "matters of substance, by depriving a defendant of substantial protections with which the

536 U.S. at ___, 122 S. Ct. at 2443.

[6] S.B. 1001 made only technical and conforming changes to the aggravating circumstance list. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

existing law surrounds the person accused of crime, or arbitrarily infringing upon substantial personal rights." *Collins*, 497 U.S. at 45, 110 S. Ct. at 2720 (quoting *Beazell*, 269 U.S. at 171, 46 S. Ct. at 69; *Malloy v. South Carolina*, 237 U.S. 180, 183, 35 S. Ct. 507, 508 (1915); and *Duncan v. Missouri*, 152 U.S. 377, 382-83, 14 S. Ct. 570, 572 (1894)) (internal quotation marks omitted). The change involved here does not affect the substantive matters of the defendants' prosecutions. *See id.* Under the new sentencing statutes, to obtain a death sentence, the state must prove the same aggravating circumstances required by the former statute and must prove them beyond a reasonable doubt. The only difference is that a jury, rather than a judge, decides whether the state has proved its case. The new sentencing statutes do not place the defendants in jeopardy of any greater punishment than that already imposed under the superseded statutes. Accordingly, applying the new sentencing statutes does not violate the federal or state Ex Post Facto Clause.

## IV.

### Does the Double Jeopardy Clause Prohibit Resentencing Under Arizona's Amended Capital Sentencing Procedure?

¶25      The defendants argue that the double jeopardy provisions of the United States and Arizona Constitutions[7] preclude

---

[7]      "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V.

resentencing under the new sentencing statutes. We hold that they do not.

¶26      Double jeopardy prevents the government from prosecuting an individual more than once for the same offense. *Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 223 (1957). According to the Supreme Court:

> The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187-88, 78 S. Ct. at 223; *see also Sattazahn v. Pennsylvania*, ___ U.S. ___, ___; 123 S. Ct. 732, 745-46 (2003) (reaffirming principle that the underlying purpose of the Double Jeopardy Clause is to prohibit repeated attempts by the state to convict, thereby exposing a defendant to embarrassment, expense, and the ordeal of another proceeding).

¶27      Double jeopardy principles generally do not apply to sentencing proceedings. *United States v. DiFrancesco*, 449 U.S. 117, 132, 101 S. Ct. 426, 435 (1980). Capital sentencing proceedings, however, provide an exception to the general rule. The penalty phase of a capital trial resembles an ordinary trial proceeding in

---

"No person shall . . . be twice put in jeopardy for the same offense." Ariz. Const. art. II, § 10.

33

which the sentencing authority chooses "between two alternatives together with standards to guide [its] decision, [and] the prosecution undert[akes] the burden of establishing facts beyond a reasonable doubt." *Monge v. California*, 524 U.S. 721, 730, 118 S. Ct. 2246, 2251 (1998) (discussing *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852 (1981)); *see Arizona v. Rumsey*, 467 U.S. 203, 212, 104 S. Ct. 2305, 2310 (1984) (holding double jeopardy applies to the penalty phase of capital trial because the penalty phase "proceeding is like a trial"). Therefore, we must determine whether resentencing the defendants under Arizona's new sentencing statutes violates the prohibition against double jeopardy.

## A.

### Resentencing Does Not Increase Sentences.

¶28 The defendants argue that because Arizona's former law prescribing judge sentencing was unconstitutional, the most severe penalty they could have received for first degree murder at the original sentencing was life or natural life in prison. They assert that, under superseded section 13-703, a convicted murderer could not receive the death penalty because that punishment conceptually did not exist. Therefore, they argue, a resentencing proceeding under the new sentencing statutes would expose them to a more severe penalty than was originally available and thus constitutes double jeopardy. The defendants rely upon decisions from two state intermediate appellate courts, *California v. Harvey*,

34

142 Cal. Rptr. 887 (App. 1978), and *State v. Choate*, 151 Ariz. 57, 725 P.2d 764 (App. 1986).

¶29    In *Harvey*, a jury convicted Harvey of several counts, including first degree murder of a police officer. 142 Cal. Rptr. at 888. After Harvey's sentencing, the California Supreme Court declared the state's capital sentencing statute unconstitutional because it failed to bring mitigating evidence into the sentencing calculus. *Id.* at 890-91; *see Rockwell v. Superior Court*, 556 P.2d 1101, 1116 (Cal. 1976). While Harvey's appeal was pending, the California Legislature amended the state's capital sentencing scheme. *Harvey*, 142 Cal. Rptr. at 890-91. The state argued that Harvey should be resentenced under the new statute. *Id.* The appellate court disagreed, holding that resentencing would violate double jeopardy because, when the state supreme court held the former capital sentencing scheme unconstitutional, "that declaration automatically reduced appellant's sentence to life imprisonment." *Id.* at 891.

¶30    Similarly, in *Choate*, the Arizona Court of Appeals held that double jeopardy prevented resentencing of a defendant on a dangerous-nature sentencing issue. 151 Ariz. at 58, 725 P.2d at 765. A jury convicted Choate of second degree murder and aggravated assault. *Id.* at 57, 725 P.2d at 764. The court of appeals vacated the dangerous-nature sentence for the second degree murder conviction because that issue was not determined by a jury.

35

*Id.* On remand, the trial judge ordered a new jury to convene to determine whether Choate should receive the dangerous-nature sentence. *Id.* Choate appealed that order. The court of appeals concluded that, because the trial judge mistakenly dismissed the jury without submitting the dangerous-nature charge in the first case, permitting a new jury to consider the enhancement allegation would constitute double jeopardy. *Id.* at 58, 725 P.2d at 765.

¶31    The Supreme Court addressed this very issue in *Dobbert*, however, and reached a different conclusion. Dobbert made the same argument that the defendants make here. The Florida Supreme Court declared the death penalty statute in effect at the time of his murders unconstitutional. Therefore, Dobbert argued, he could not receive a death sentence because "at the time he murdered his children there was no death penalty 'in effect' in Florida." 432 U.S. at 297, 97 S. Ct. at 2300. The Supreme Court rejected this argument, holding that double jeopardy did not attach because a statute, albeit unconstitutional, permitting capital punishment for first degree murder existed at the time of the crimes. *Id.* at 298, 97 S. Ct. at 2300. That statute placed the defendant on notice that he faced capital punishment if he were convicted. *Id.*

¶32    The *Harvey* court distinguished *Dobbert* by noting that Dobbert was ultimately sentenced under a constitutional statute, whereas Harvey was not. 142 Cal. Rptr. at 890. We do not find the distinction persuasive, however, because it does not affect the

36

Supreme Court's *Dobbert* analysis. There the Court discounted the defendant's "sophistic argument" because the more important consideration was that the state's first degree murder sentencing policy provided a death sentence even though the *procedures* for imposing that sentence later were found unconstitutional. *Dobbert*, 432 U.S. at 297-98, 97 S. Ct. at 2300 (quoting *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S. Ct. 317, 318 (1940)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1264 & n.9 (9th Cir. 1982) (rejecting argument that death sentence is automatically reduced "to life imprisonment immediately upon invalidation of the state's death penalty law"). In short, the Court rejected the defendants' argument in *Dobbert*.

¶33    The basic issue we must resolve is not whether a death sentence metaphysically existed when the defendants were sentenced, but rather whether any defendant was "acquitted" at his original trial of whatever findings were necessary to impose a death sentence. While a defendant can be resentenced following an appellate reversal of his or her original sentence, the Double Jeopardy Clause prohibits imposing any sentence of which the defendant was either actually or impliedly "acquitted" in the first instance. *Rumsey*, 467 U.S. at 211, 104 S. Ct. at 2310; *Bullington*, 451 U.S. at 437, 445, 101 S. Ct. at 1857, 1861; *Peak v. Acuna*, 203 Ariz. 83, ___ ¶ 8, 50 P.3d 833, 835 (2002) (stating implied acquittal exists where appellate court reverses conviction for

37

insufficiency of evidence and double jeopardy precludes retrial). Thus, a defendant cannot be sentenced to death at a subsequent sentencing proceeding if "the sentencer or reviewing court has decided that the prosecution has not proved its case *that the death penalty is appropriate*." *Poland v. Arizona*, 476 U.S. 147, 155, 106 S. Ct. 1749, 1755 (1986) (internal quotation marks omitted).

¶34     The Supreme Court has thoroughly treated and established the legal principle that applies here.  In *State v. Rumsey*, a jury convicted the defendant of first degree murder.  130 Ariz. 427, 636 P.2d 1209 (1981).  During the sentencing phase of the trial, the judge, misinterpreting the pecuniary gain aggravating circumstance as applying only to a murder for hire, found no aggravating circumstances and sentenced the defendant to life in prison.  *Id*. at 431-32, 636 P.2d at 1213-14.  On appeal, we held that the pecuniary gain aggravating circumstance included any murder committed for financial gain and remanded the matter for resentencing.  *Id*. at 431, 636 P.2d at 1213.  On remand, the judge determined that the pecuniary gain circumstance existed and sentenced the defendant to death.  *State v. Rumsey*, 136 Ariz. 166, 168, 665 P.2d 48, 50 (1983).  We reviewed the case on direct appeal and held that Rumsey's death sentence violated the Double Jeopardy Clause because the life sentence imposed at his first trial implicitly acquitted him of the death sentence, and that Rumsey was "entitled to finality" on that issue.  *Id*. at 175, 665 P.2d at 57.

38

¶35     The Supreme Court granted *certiorari* and affirmed.  It held that a capital defendant cannot receive the death penalty on resentencing if he originally had been sentenced to life in prison. *Rumsey*, 467 U.S. at 212, 104 S. Ct. at 2310.  The Court explained that "an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge."  *Id.* at 211, 104 S. Ct. at 2310.  Thus, the Supreme Court's *Rumsey* decision speaks to situations in which the defendant originally received a sentence *other than* death.

¶36     In a similar case in which the defendant originally received a capital sentence, however, the Supreme Court ruled differently.  In *Poland v. Arizona*, the Court held that capital defendants sentenced to death at their original sentencing proceeding and whose sentences were vacated on appeal can be resentenced to death on remand.  476 U.S. at 151, 106 S. Ct. at 1753.  Both of the Poland brothers received death sentences following their first degree murder convictions. *State v. Poland*, 132 Ariz. 269, 273, 645 P.2d 784, 788 (1982).  During the sentencing phase, the judge failed to find the pecuniary gain aggravating circumstance because, like the trial judge in *Rumsey*, he misunderstood that circumstance as applying only to a murder for hire.  *Id*. at 285-86, 645 P.2d at 800-01.  The judge did, however, find the "especially heinous, cruel or depraved" statutory aggravating factor and sentenced the defendants to death.  *Id*. at

39

285, 645 P.2d at 800.  On appeal, this court held that the evidence adduced during the sentencing proceeding did not support a finding of a heinous, cruel or depraved murder.  *Id*. at 285, 645 P.2d at 800.  We also restated that a killing need not be a murder for hire to qualify for the pecuniary gain aggravator.  *Id.* at 286, 645 P.2d at 801.  On remand, the judge again sentenced both Polands to death.  *State v. Poland (Patrick)*, 144 Ariz. 388, 392, 698 P.2d 183, 187 (1985); *State v. Poland (Michael)*, 144 Ariz. 412, 414, 698 P.2d 207, 209 (1985).  We again reviewed and affirmed the Polands' sentences on direct appeal and held that the evidence, although insufficient to support a finding of cruelty, did support a finding of pecuniary gain motive.  *Poland (Patrick)*, 144 Ariz. at 407, 698 P.2d at 202; *Poland (Michael)*, 144 Ariz. at 416, 698 P.2d at 211.

¶**37**       On *certiorari*, the Supreme Court distinguished the Polands' case from *Rumsey*, and that distinction was critical.  In *Poland*, both defendants *originally received* capital sentences.  Unlike the judge in Rumsey's trial, no fact-finder had "acquitted" the Polands of capital murder by imposing a prison sentence at the first sentencing proceeding.  *Poland*, 476 U.S. at 156-57, 106 S. Ct. at 1756.  On resentencing, then, the defendants did not face sentencing on a charge of which they had been previously "acquitted" for double jeopardy purposes.  *Id.* at 157, 106 S. Ct. at 1756.  Therefore, jeopardy did not attach and double jeopardy did not bar the subsequent death sentences.  *Id.*

40

¶38    Like the defendants in *Poland*, the defendants on direct appeal all received death sentences at their original trials. The fact-finder made those findings necessary to impose a death sentence. In no sense has a fact-finder concluded that the state failed to prove aggravating circumstances beyond a reasonable doubt. On remand, no defendant can receive a sentence greater than that which already has been imposed. Accordingly, we hold that jeopardy has not attached.

**B.**

**Resentencing Does Not Supplement the Original Jury Verdict.**

¶39    The defendants also argue that resentencing violates double jeopardy because further jury proceedings supplement the original jury verdict, thereby violating each defendant's constitutional "right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837 (1949). Although completing a defendant's trial with the same judge or jurors is ideal, a defendant holds no absolute right to such an arrangement. In fact, in *Wade v. Hunter*, the Supreme Court affirmed a military conviction in which the charges were dropped from one court-martial proceeding and re-instituted in another to accommodate witnesses. *Id.* at 687-88, 69 S. Ct. at 836. According to the Supreme Court:

> The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is

41

entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.

*Id.* at 688-89, 69 S. Ct. at 837.

¶40       The ability to resentence a capital defendant by a different set of jurors is implicit in double jeopardy cases decided by the Supreme Court in a death penalty context. *See Rumsey*, 467 U.S. at 211, 104 S. Ct. at 2310; *Wade*, 336 U.S. at 688-89, 69 S. Ct. at 837.[8]   A capital defendant whose original sentence is vacated on appeal can be resentenced to death so long as the defendant has not been "acquitted" of the death sentence. *E.g.*, *Sattazahn*, ___ U.S. at ___, 123 S. Ct. at 738; *Poland*, 476 U.S. at 151, 106 S. Ct. at 1753.

## C.

### The Arizona Constitution.

¶41       We reach the same result under Article II, Section 10 of the Arizona Constitution.   In *Pool v. Superior Court*, we interpreted the state Double Jeopardy Clause more broadly than its

---

[8]      For the most part, recalling the defendant's original guilt phase jury also presents logistical problems and is wholly impractical.

federal counterpart when prosecutorial misconduct causes a mistrial.  139 Ariz. 98, 108, 677 P.2d 261, 271 (1984); *accord State v. Minnitt*, 203 Ariz. 431, ___ ¶ 29, 55 P.3d 774, 781 (2002).  While we recognized the importance of consistency between federal and state constitutional law, we found it necessary to diverge from the double jeopardy standards established by the United States Supreme Court under the federal constitution.  Our decision turned on the principle that the purpose of the Arizona Double Jeopardy Clause includes protecting citizens from facing multiple trials for the same offense because of prosecutorial bad faith:

> In our view, therefore, the resolution of the question of when jeopardy attaches should turn upon the concept of enforcing the constitutional guarantee against double jeopardy when the right to be free from multiple trials, which that clause was meant to guarantee, would be impaired by the prosecutor's intentional, improper conduct. We do not agree that standards cannot be formulated to accomplish the objectives of the clause in situations such as this.

*Pool*, 139 Ariz. at 108, 677 P.2d at 271 (citation omitted).

¶**42**    The defendants do not face further jeopardy because of prosecutorial misconduct.  Moreover, we find no reason to extend the state Double Jeopardy Clause beyond its federal counterpart under these facts.  Therefore, we conclude that applying the new sentencing statutes does not constitute a double jeopardy violation under the Arizona Constitution.

**V.**

**Should Defendants Convicted of Murders Committed Before the**

43

**Natural Life Sentence Became Available Have Their Sentences Reduced to Life if the Court Reduces Their Sentences?**

¶43        In 1993, the Arizona Legislature amended A.R.S. section 13-703 to add a "natural life" sentencing option for defendants convicted of first degree murder.  1993 Ariz. Sess. Laws ch. 153, § 1.  The parties stipulate, and we agree, that the sentence of life without the possibility of parole for twenty-five years, rather than natural life, must apply to those defendants sentenced under the pre-1993 statute.  *See*, *e.g.*, *State v. Barreras*, 181 Ariz. 516, 523-24 n.7, 892 P.2d 852, 859-60 n.7 (1995) ("The amended statute [permitting natural life sentence] is inapplicable here, however, because this case arose before its effective date.").  If subsequent proceedings result in life sentences, these defendants cannot receive a natural life sentence; only a sentence of life without the possibility of parole for twenty-five years can apply.

**VI.**

**Should the Court Review Sixth Amendment *Ring II* Error as Structural Error or for Harmless Error?**

¶44        The Supreme Court struck down Arizona's former capital sentencing statutes because they permitted a judge, rather than a jury, to find aggravating factors.  *Ring II*, 536 U.S. at ___, 122 S. Ct. at 2443.  We conclude that Arizona's failure to submit this element of capital murder to the jury does not constitute structural error.  Consequently, the Sixth Amendment does not

44

require automatic reversal of a death sentence imposed under the former sentencing statutes. *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833 (1999); *Arizona v. Fulminante*, 499 U.S. 279, 306-07, 111 S. Ct. 1246, 1263 (1991). Instead, we will review the defendants' capital sentences for harmless error.

¶**45** Most errors that we consider on appeal, even those involving constitutional error, constitute trial errors, "which occur[] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented." *Fulminante*, 499 U.S. at 307-08, 111 S. Ct. at 1264. In cases involving trial error, we consider whether the error, so assessed, was harmless beyond a reasonable doubt. If so, we uphold the verdict entered. In a limited number of cases, however, structural error occurs. In such instances, we automatically reverse the guilty verdict entered. Unlike trial errors, structural errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Neder*, 527 U.S. at 8-9, 119 S. Ct. at 1833 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 3106 (1986)).

¶**46** The Supreme Court has defined relatively few instances in which we should regard error as structural. Those instances

involve errors such as a biased trial judge,[9] complete denial of criminal defense counsel,[10] denial of access to criminal defense counsel during an overnight trial recess,[11] denial of self-representation in criminal cases,[12] defective reasonable doubt jury instructions,[13] exclusion of jurors of the defendant's race from grand jury selection,[14] excusing a juror because of his views on capital punishment,[15] and denial of a public criminal trial.[16]  In all those instances, the error infected "the entire trial process" from beginning to end.  *Neder,* 527 U.S. at 8, 119 S. Ct. at 1833 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 1717 (1993)).

¶47     The Court's *Ring II* decision turned upon the fact that aggravating circumstances serve as the functional equivalent of an element of the greater capital murder offense, rather than as a

---

[9]     *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437 (1927).

[10]    *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963).

[11]    *Geders v. United States*, 425 U.S. 80, 96 S. Ct. 1330 (1976).

[12]    *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944 (1984).

[13]    *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078 (1993).

[14]    *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617 (1986).

[15]    *Gray v. Mississippi*, 481 U.S. 648, 107 S. Ct. 2045 (1987).

[16]    *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210 (1984).

46

sentencing factor. *Ring II*, 536 U.S. at ___, 122 S. Ct. at 2443. "Because Arizona's enumerated aggravating factors operate as the *functional equivalent of an element of a greater offense*," the Supreme Court held, "the Sixth Amendment requires that they be found by a jury." *Id.* (emphasis added) (citation and internal quotations omitted). The essential question, therefore, is whether we should characterize Arizona's failure to submit this element of the capital murder offense to the jury as structural or trial error.[17]

¶48    In a decision foreshadowing *Apprendi* and *Ring II*, the Supreme Court declined to find structural error when the trial judge failed to submit an element of the offense to the jury. In *Neder v. United States*, the Court held that the trial court's failure to instruct the jury on the materiality element of federal tax fraud should be reviewed as trial error. 527 U.S. at 19-20, 119 S. Ct. at 1839. The Court distinguished an error omitting an element of the offense in a jury instruction from structural error: "Unlike such defects as the complete deprivation of counsel or

---

[17]    At various times, the Court's opinion suggests that *Ring II* error should be considered under a harmless error analysis. First, the Court declined to review the case for harmless error, stating instead that state courts should be the first to do so. *Ring II,* 536 U.S. at ___ n.7, 122 S. Ct. at 2443 n.7. Second, when commenting upon the fate of death row inmates after the *Ring II* decision, Justice O'Connor stated that "prisoners will be unable to satisfy the standards of harmless error or plain error review." *Id.* at ___, 122 S. Ct. at 2449 (O'Connor, J., dissenting). Because the Court did not consider the issue of the appropriate standard of review, we do not regard these statements as conclusive.

47

trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S. Ct. at 1833. Thus, the Court concluded, omitting an element of the offense from the jury instruction is not the sort of error that taints the trial process itself.

> Neder was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to Neder's defense against the tax charges. Of course, the court erroneously failed to charge the jury on the element of materiality, but that error did not render Neder's trial "fundamentally unfair," as that term is used in our cases.

*Id*. at 9, 119 S. Ct. at 1834.[18]

**¶49** In a similar decision that followed *Apprendi* and *Ring II,* the Court again applied the plain error test to a judge's consideration of a factor properly left to the jury. *United States v. Cotton*, 535 U.S. 625, ___, 122 S. Ct. 1781, 1785 (2002). Federal law makes available enhanced penalties for drug offenses if the government proves a statutory threshold drug quantity. *Id.* at ___, 122 S. Ct. at 1783. In *Cotton*, the government failed to allege in its superseding indictment the quantity of drugs involved

---

[18]   *See also California v. Roy*, 519 U.S. 2, 5-6, 117 S. Ct. 337, 339 (1996) (holding trial judge's failure to instruct jury on an element of accomplice liability first degree murder was a trial error to which the harmless error test applied).

in the offense, as required by the enhanced penalty. *Id.* Based on trial testimony, the district court found the petitioner "responsible for at least 500 grams of cocaine base," ten times the amount set by statute for an enhanced penalty, and imposed the enhanced sentence. *Id.* at ___, 122 S. Ct. at 1784. The Supreme Court concluded that the district court improperly usurped the quantity finding from the grand jury, but reviewed for plain error. *Id.* at ___, 122 S. Ct. at 1785-86. The Court held that the trial evidence was so "overwhelming" and "essentially uncontroverted" that "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at ___, 122 S. Ct. at 1786.

¶50 Although *Neder* and *Cotton* did not involve a capital sentence, their holdings that a failure to submit one element of an offense to a jury does not infect the trial process from beginning to end apply equally here. Under both Arizona's superseded and current capital sentencing schemes, a defendant's trial consists of two phases: a guilt phase and a penalty phase. In the guilt phase, the jury decides whether the defendant committed first degree or felony murder as defined by A.R.S. section 13-1105. If the jury finds the defendant guilty beyond a reasonable doubt, the trial continues to the penalty phase. Under the former system, the judge found, beyond a reasonable doubt, the ultimate element required to complete a capital murder offense: at least one aggravating

49

circumstance not outweighed by one or more mitigating factors. A.R.S. § 13-703.E. Defendants' trials thus took place before an impartial judge and jury, who used the correct standard of proof. Defendants received the assistance of counsel, who were available during all phases of their prosecution. Any error, then, affected the submission of one element rather than the entire trial and did not render the entire trial fundamentally unfair.[19] *See Neder*, 527

---

[19] The dissent disagrees with this conclusion, arguing that the defendants experienced a "[c]omplete denial of [the right to] trial by jury at the sentencing phase . . . ." Dissent, ¶ 109. Notably, the dissent does not suggest that the defendants were denied a trial by jury, and it could not, for the error here resulted not from denying defendants a jury trial but from the failure to submit one element of the capital offense to the jury for decision. A capital trial comprises just one trial, divided into guilt and sentencing phases, and has always been understood as such, both by this court and by the U.S. Supreme Court. *See, e.g., Tuilaepa v. California*, 512 U.S. 967, 971-72, 114 S. Ct. 2630, 2634 (1994) (holding trier of fact must find one aggravating circumstance at either the guilt or penalty phase); *Payne v. Tennessee*, 501 U.S. 808, 817, 823, 825-26, 111 S. Ct. 2597, 2604, 2607-08 (1991) (repeated references to "guilt phase" and "penalty phase" of capital trial); *State v. Smith*, 203 Ariz. 75, *passim*, 50 P.3d 825, *passim* (2002) (referring to "sentencing phase" and "sentencing hearing"); *Ring I*, 200 Ariz. at 279 ¶ 42, 25 P.3d at 1151 (referring to a "separate evidentiary hearing"). The only courts of which we are aware that have considered the argument that a capital trial consists of two "trials" rather than two phases of one trial have rejected the dissent's approach. *Flamer v. Delaware*, 68 F.3d 736, 758-59 (3rd Cir. 1995) ("The guilt and penalty phases of a capital trial are parts of a single proceeding, and there is no constitutional requirement that they be treated as if they were two entirely separate trials."); *Holland v. Mississippi*, 705 So. 2d 307, 330 ¶ 61 (Miss. 1997) (sentencing phase of a capital trial not a separate trial, but that phase of the case that concerns sentencing).

Arizona statutes reflect the single capital trial approach accepted by our court and the Supreme Court. Arizona law refers to the sentencing proceeding as the capital trial's "penalty phase." *E.g.*, A.R.S. § 13-703.C. In addition, former and current capital

50

U.S. at 9, 119 S. Ct. at 1833.

¶51     We are not the first court to reach this conclusion. Courts implementing *Apprendi* and *Ring* have reached a consensus that structural error does not occur when a judge fails to submit to the jury an element of a crime, otherwise required to be found by a jury under the Sixth Amendment.[20]  In *United States v. Matthews*, the court held "*Apprendi* error is susceptible to harmless error analysis."  312 F.3d 652, 665 (5th Cir. 2002).  The Seventh Circuit Court of Appeals also found "that errors in both the indictment and the charge to the jury are subject to harmless-error analysis." *United States v. Dumes,* 313 F.3d 372, 385 (7th Cir. 2002); *accord United States v. Sanders*, 247 F.3d 139, 150 (4th Cir. 2001) (citing cases from the First, Second, Fourth, Fifth, Seventh, and Eleventh Circuits holding that harmless error applies in *Apprendi* cases);

---

sentencing statutes permit use at the sentencing phase of evidence adduced during the guilt phase of the trial.  *Id*. §§ 13-703.C (2001), 13-703.D (Supp. 2002).

[20]     The one case finding structural error is *Esparza v. Mitchell*, a case involving a challenge under the Eighth Amendment rather than the Sixth.  In that case, two members of the panel held the harmless error test inapplicable in a capital case where, under Ohio law, aggravating factors were required to be charged in the indictment but were not.  310 F.3d 414, 421 (6th Cir. 2002).  The dissenting judge, concluding that harmless error applied, outlined the seminal Supreme Court cases defining the harmless error doctrine and concluded that the error involved did not amount to deprivation of "basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence."  *Id.* at 428 (Suhrheinrich, J., dissenting) (quoting *Neder*, 527 U.S. at 8-9, 119 S. Ct. at 1833 (internal quotation marks omitted)).

*Johnson v. Nevada*, 59 P.3d 450, 459-60 (Nev. 2002).[21]

¶52     Those holdings comport with prior Arizona law.  In *State v. Styers*, we applied the fundamental error test to the trial judge's failure to define the "without legal authority" element of the kidnapping offense in instructions to the jury.  177 Ariz. 104, 111-12, 865 P.2d 765, 772-73 (1993).

¶53     Accordingly, we hold that Arizona's failure to require a trial judge to submit the aggravating circumstance element of capital murder to a jury does not constitute structural error.  We will review the sentences of these defendants for harmless error.

## VII.

## A.

### Does *Ring II* Apply to Aggravating Circumstances Involving Prior Convictions?

¶54     Arizona law establishes two aggravating circumstances for

---

[21]     In addition to these decisions involving the Sixth Amendment, federal courts have held that Eighth Amendment violations occurring at the trial court level are subject to harmless error analysis.  *See, e.g., Jones (Lewis) v. United States*, 527 U.S. 373, 402-05, 119 S. Ct. 2090, 2108-10 (1999); *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441 (1990).  Most recently, the Ninth Circuit Court of Appeals held that a death sentence imposed when an unconstitutionally vague jury instruction was given could be reviewed for harmless error. *Valerio v. Crawford*, 306 F.3d 742, 756 (9th Cir. 2002) ("When a state trial court sentences a defendant to death based in part on an unconstitutionally vague aggravating circumstance, the state appellate court . . . can find the error harmless under *Chapman v. California*." (Citation omitted.)).

prior criminal convictions.[22]  A.R.S. § 13-703.F.1-.2.  The first of Arizona's prior conviction factors, A.R.S. section 13-703.F.1, applies when "[t]he defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable."  The second, A.R.S. section 13-703.F.2, is implicated when "[t]he defendant was previously convicted of a serious offense, whether preparatory or completed."[23]  In *Almendarez-Torres v. United States*, the Supreme Court held that a judge could consider prior convictions to enhance a penalty beyond that authorized by the facts established by the jury's

---

[22]     The 2002 amendment did not change the F.1 and F.2 aggravating factors.  2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

[23]     Section 13-703.H defines "serious offense" as:

1.   First degree murder.
2.   Second degree murder.
3.   Manslaughter.
4.   Aggravated assault resulting in serious physical injury or committed by the use, threatened use or exhibition of a deadly weapon or dangerous instrument.
5.   Sexual assault.
6.   Any dangerous crime against children.
7.   Arson of an occupied structure.
8.   Robbery.
9.   Burglary in the first degree.
10.  Kidnapping.
11.  Sexual conduct with a minor under fifteen years of age.

A.R.S. § 13-703.H (Supp. 2002).
Before 1993, this aggravating circumstance occurred if "[t]he defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person."  A.R.S. § 13-703.F.2 (1989), *amended by* 1993 Ariz. Sess. Laws ch. 153, § 1.

verdict.  523 U.S. 224, 226-27, 118 S. Ct. 1219, 1222 (1998).

¶55     The State argues that *Almendarez-Torres* establishes an exception to *Apprendi/Ring* for the two prior conviction aggravating circumstances.  According to the State, a judge may constitutionally determine the existence of any prior conviction. The defendants argue that *Almendarez-Torres* is no longer good law.[24] They also argue that the F.1 and F.2 aggravating circumstances do not fit within the prior conviction exception.  Alternatively, they argue that the Arizona Constitution's jury trial guarantee should supplant *Almendarez-Torres* and require a jury determination of prior convictions.  For the following reasons, we hold that *Almendarez-Torres* remains effective and that the Sixth Amendment does not require a jury to determine prior convictions under sections 13-703.F.1 and F.2.

---

[24]     The defendants argue that we should ignore *Almendarez-Torres* because Justice Thomas allegedly has repudiated his position in that case, thereby "expressly" invalidating the decision.  In *Apprendi v. New Jersey*, Justice Thomas did express regret for voting with the five member *Almendarez-Torres* majority.  530 U.S. 466, 518-21, 120 S. Ct. 2348, 2378-79 (2000).
       The defendants' supposition as to Justice Thomas's view, however, does not comport with the Supreme Court's recent decision in *Sattazahn v. Pennsylvania*, ___ U.S. ___, 123 S. Ct. 732 (2003). In that case, Justice Thomas joined Justice Scalia's separate opinion which stated, in *dicta*, that "the existence of any fact *(other than a prior conviction)* increas[ing] the maximum punishment that may be imposed . . . constitutes an element [of the offense]." *Id*. at ___, 123 S. Ct. at 739 (emphasis added).  This language demonstrates the dangers of vote-counting before the Court announces its decision on a particular issue.

54

## 1. Prior Conviction Aggravating Circumstance.

¶56     First we consider whether Arizona's statutory aggravating circumstance for prior convictions falls within the *Almendarez-Torres* exception. In cases handed down within the past five years, the Supreme Court consistently has stated that a statutory provision permitting increased penalties when a defendant has a prior conviction operates as a sentencing enhancement and not as an element of a criminal offense.[25]

¶57     In two Supreme Court cases, defendants challenged sentencing enhancements when the government failed to allege the factor increasing their penalty in the indictment. In *Almendarez-Torres*, the Court held that a prior conviction need not be alleged in a criminal indictment. 523 U.S. at 226-27, 118 S. Ct. at 1222. The Court first concluded that Congress intended to use recidivism as a sentencing factor and not as a substantive element. *Id*. at 230-31, 118 S. Ct. at 1226. It then noted that recidivist provisions traditionally are used exclusively as sentencing factors, pointing out that no federal criminal statute contains recidivism as a statutory element. *Id*. at 244, 118 S. Ct. at 1231. Enhanced penalties for repeat offenders do "not relate to the

---

[25]     The Court continuously refers to the prior conviction enhancement as an exception to *Apprendi*. *E.g.*, *Sattazahn*, ___ U.S. at ___, 123 S. Ct. at 739; *United States v. Cotton*, 535 U.S. 625, ___, 122 S. Ct. 1781, 1783 (2002).

commission of the offense, *but go[] to the punishment only*, and therefore . . . may be subsequently decided [by a judge]." *Id.* at 244, 118 S. Ct. at 1231 (quoting *Graham v. West Virginia*, 224 U.S. 616, 629, 32 S. Ct. 583, 588 (1912)).

¶58        In its next term, the Court decided a similar case and reached a revised, but consistent, conclusion. In *Jones v. United States*, the Court held that federal prosecutors must allege in the indictment and prove, beyond a reasonable doubt, an element of the federal car jacking statute the lower courts previously had regarded as a sentencing factor. 526 U.S. 227, 229, 119 S. Ct. 1215, 1217 (1999). In Jones's case, serious bodily injury provided the additional element. *Id*. at 231, 119 S. Ct. at 1218. Notwithstanding its decision, the Court reaffirmed that "not every fact expanding a penalty range must be stated in a felony indictment" and expressly distinguished sentence enhancements for prior criminal convictions from other statutory elements because the law traditionally regards "recidivism as a sentencing factor, not as an element to be set out in the indictment." *Id*. at 248-49, 119 S. Ct. at 1226-27. The Court appeared less concerned with the fact that *Jones* involved a Sixth Amendment challenge, while *Almendarez-Torres* did not, than with the fact that sentencing enhancements for prior convictions serve a traditional penological purpose. *Id*.

¶59     The Court revisited the prior conviction sentence enhancement issue in *Apprendi*, decided one year after *Jones*. In *Apprendi*, the Court held that a statutory provision providing an increased penalty when a crime was motivated by "hate" involved not a sentencing enhancer, but an element of the offense. 530 U.S. at 491-92, 120 S. Ct. at 2363. Consequently, the Sixth Amendment jury trial right required that the jury determine the element's existence before the enhanced penalty could be imposed. *Id*. at 490, 120 S. Ct. at 2362-63 ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The Court carefully distinguished its view that prior convictions are not elements of an offense and structured its holding to exclude prior convictions from its reach. *Id*. at 487-90, 120 S. Ct. at 2361-63.

¶60     The *Apprendi* Court found no need to submit the question of prior convictions to the jury because, unlike other factors, prior convictions already had been established through proceedings incorporating procedural safeguards:

> Both the certainty that procedural safeguards attached to any "fact" of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that "fact" in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact" increasing punishment beyond the maximum statutory range.

57

530 U.S. at 488, 120 S. Ct. at 2362. Thus, permitting a judge to decide the "fact" of a prior conviction does not raise Sixth Amendment concerns; those convictions are themselves products of Sixth Amendment-compliant proceedings.

¶61      We cannot ignore a Supreme Court decision interpreting federal law unless the Court expressly overrules or casts cognizable doubt on that decision.  In *Agostini v. Felton*, the Court stated:

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921-22 (1989)); *accord United States v. Gatewood*, 230 F.3d 186, 192 (6th Cir. 2000); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000) ("If the views of the Supreme Court's individual justices and the composition of the Court remain the same, *Almendarez-Torres* may eventually be overruled.") (citing *Apprendi,* 120 S. Ct. at 2362 ("[I]t is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were

58

contested.")); *State v. Harrod*, 200 Ariz. 309, 318 ¶ 44, 26 P.3d 492, 501 (2001) (rejecting defendant's argument that *Apprendi* implicitly overruled *Walton*), *vacated on other grounds by Harrod v. Arizona*, ___ U.S. ___, 122 S. Ct. 2653 (2002) (mem.). Our constitutional system requires adherence to the rule of law established in *Almendarez-Torres* unless and until the Court unequivocally disapproves its holding. *Ring I*, 200 Ariz. at 279-80 ¶ 44, 25 P.3d at 1151-52.

**2. Lower Federal and State Appellate Courts.**

¶62 Courts consistently have implemented both *Apprendi* and *Almendarez-Torres*. In cases decided after *Apprendi*, many defendants facing prior conviction sentence enhancements argued that *Apprendi* had either overruled or cast doubt upon *Almendarez-Torres*. Courts universally reject this argument and recognize that the two cases can be harmonized by construing *Almendarez-Torres* as the exception to *Apprendi*'s general rule. *E.g.*, *United States v. Martino*, 294 F.3d 346, 349 (2d Cir. 2002); *United States v. Stone*, 306 F.3d 241, 243 (5th Cir. 2002); *Cherry v. Araneta*, 203 Ariz. 532, ___ ¶ 5, 57 P.3d 391, 392-93 (App. 2002); *State v. Kendall*, 58 P.3d 660, 667-68 (Kan. 2002). In explaining its decision, the Ninth Circuit Court of Appeals stated:

> It is true that in *Apprendi,* the Court expressed
> reservations about *Almendarez-Torres.* However, the Court
> reasoned that any due process or Sixth Amendment

59

concerns—arising out of the judicial determination of a "fact" that increased punishment beyond the statutory maximum—were mitigated in *Almendarez-Torres* by "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge the accuracy of that 'fact' in his case." Thus, the Court in *Apprendi* chose not to overrule *Almendarez-Torres,* and unmistakably carved out an exception for "prior convictions" that specifically preserved the holding of *Almendarez-Torres.*

*Pacheco-Zepeda*, 234 F.3d at 414 (citations omitted).

¶63    The Supreme Court consistently has held that legislatures may permit a judge to impose an increased penalty based upon a defendant's recidivism. We therefore conclude that the Sixth Amendment does not require a jury to find prior convictions beyond a reasonable doubt.

### 3. F.1 and F.2 Prior Conviction Aggravating Factors.

¶64    Several defendants whose cases are consolidated in this appeal received death sentences based, at least in part, upon prior conviction findings made by a sentencing judge. Following the teachings of *Almendarez-Torres*, *Jones* and *Apprendi*, we hold that the Sixth Amendment does not require remanding these cases for resentencing on the F.1 and F.2 circumstances.

¶65    The characteristic of a prior conviction aggravating circumstance that sets it apart from other circumstances is that the original criminal proceeding, through either a guilty plea or a verdict of guilt, established the circumstance. No additional

benefit derives from having a jury re-find an aggravating circumstance already established through a guilty plea or a jury verdict. At each proceeding giving rise to the prior criminal conviction, defendants either waived their right to a jury trial or received a jury determination of guilt, and procedural safeguards protected the defendant against constitutional violations. Moreover, each defendant had an opportunity to appeal his conviction.

¶66 The F.1 and F.2 aggravating circumstances contemplate a more severe punishment for persons who continue to commit crimes. Our jurisprudence traditionally has viewed recidivism as a sentencing factor to be determined by a judge. *Almendarez-Torres*, 523 U.S. at 243, 118 S. Ct. at 1230. Moreover, under the pre-*Ring II* capital sentencing scheme, the legislature clearly intended prior convictions to be sentencing factors and not substantive elements of capital murder. *See, e.g.*, A.R.S. § 13-703.F-.G (Supp. 2001) (instructing the court to consider aggravating circumstances when deciding which sentence to impose).

¶67 We reach a different conclusion for those defendants for whom the trial judge found an F.2 aggravating circumstance prior to 1993. As to those defendants, determining the presence of the F.2 factor required additional fact finding; the judge needed to go beyond the mere fact that the prior conviction existed.

¶68 Arizona amended the requirements for finding an F.2 factor in 1993.[26] Prior to the 1993 amendment, section 13-703.F.2 permitted finding this aggravating circumstance when "[t]he defendant was previously convicted of a felony in the United States *involving the use or threat of violence on another person*." A.R.S. § 13-703.F.2 (1989) (emphasis added). State law did not define "violence" in this context. In *United States v. Breitweiser*, the court pointed out:

> If a recidivist statute permitted enhancement based on proof of underlying conduct, however, factual questions could arise as to exactly what conduct the defendant engaged in. Typically, such factual questions are within the province of a jury and this Court doubts that the Supreme Court would construe *Almendarez-Torres* as applying to such situations.

220 F. Supp. 2d 1374, 1379 (N.D. Ga. 2002). We agree that when an additional finding must be made beyond the bare fact that a prior conviction exists, the Sixth Amendment demands that a jury perform this task. That situation can arise for defendants whose F.2 factor depended upon a finding that a prior conviction reflected a crime involving the use or threat of violence. None of the consolidated defendants were sentenced under such a circumstance. Therefore, none of these cases involve a Sixth Amendment violation based on a judge's finding of one or more F.2 aggravating circumstances.

---

[26] 1993 Ariz. Sess. Laws ch. 153, § 1.

62

### 4. The Arizona Constitution.

¶69     This court has held that the Arizona Constitution's Sixth Amendment analog, Article II, Section 23,[27] provides substantially the same right to a jury trial as does the Sixth Amendment. *State v. Carlson*, 202 Ariz. 570, 577 ¶ 18, 48 P.3d 1180, 1187 (2002). Nevertheless, the defendants urge us to look to the Arizona Constitution to find a requirement that prior conviction aggravating circumstances must be found by a jury.

¶70     They point to two decisions.  The first, *State v. Carlson*, rejected an argument that the Arizona constitutional right to an impartial jury provides greater protection than does the federal constitution against pretrial publicity affecting the jury pool.  *Id*. at 576-77 ¶¶ 17-18, 48 P.3d at 1186-87.  We stated that our constitution does not afford any greater protection to defendants against pretrial media coverage than does the federal constitution.  *Id.* at 577 ¶ 18, 48 P.3d at 1187.  The second case,

---

[27]     That provision states:

> The right of trial by jury shall remain inviolate. Juries in criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law shall consist of twelve persons. In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict. In all other cases, the number of jurors, not less than six, and the number required to render a verdict, shall be specified by law.

Ariz. Const. art. II, § 23.

*State ex rel. McDougall v. Strohson*, held that Arizona's Constitution traditionally provides greater access to jury trials than that required by the federal constitution. 190 Ariz. 120, 121-22, 945 P.2d 1251, 1252-53 (1997). Under the federal constitution, only crimes punishable by more than six months in jail must be tried by a jury. *Id.* at 122, 945 P.2d at 1253. In instances in which a defendant can be sentenced to less than six months in jail, in contrast, our constitution demands a jury trial if "the moral quality of the act charged, and its relationship to common law crimes" requires that a jury determine guilt.[28] *Id.*

¶71 In relying on these decisions, the defendants overlook the distinction between jury impartiality or jury access issues and the *Apprendi/Ring* issue. The *Carlson* case rejected an expansive interpretation of the Arizona Constitution because we were unwilling to move beyond federal precedent in this area. Our holding in *Strohson* means only that a defendant is entitled to a jury trial for certain minor crimes for which the federal constitution does not require a jury trial.

¶72 Under these facts, then, we hold that Article II, Section

---

[28] For instance, we have held that the crimes of driving under the influence, *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966), and possession of marijuana, *State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989), require a jury trial even though they are punishable by less than six months in jail.

23 provides substantially the same jury trial right as does the Sixth Amendment.

**B.**

### Can the Finding of an Aggravating Circumstance Be Implicit in the Jury's Verdict of Conviction?

¶73        We asked the parties to discuss whether any aggravating circumstance could necessarily derive from a jury's verdict of conviction for first degree murder, either standing alone or when considered in conjunction with other contemporaneous convictions. The State argues that pecuniary gain, A.R.S. section 13-703.F.5, other homicides committed during the commission of the offense, A.R.S. section 13-703.F.8, and age of victim less than fifteen years or seventy years or older, A.R.S. section 13-703.F.9, can logically inhere in a verdict.  The defendants argue that an aggravating circumstance can never be implicit.

¶74        We hold that the pecuniary gain and multiple homicide aggravators usually are not implicit in a jury's verdict.  However, the age of the victim can be implicit in the verdict, if the jury simultaneously convicts the defendant of an offense that includes the age of the murdered victim as an element of the crime.[29]

### 1. Pecuniary Gain.

---

[29]     The 2002 amendment did not change the F.5 and F.8 aggravating circumstances.  2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.  It did, however, make a technical change to the F.9 factor.  *Id.*

¶75　　　　Under A.R.S. section 13-703.F.5, an aggravating circumstance exists when a murder is committed "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13-703.F.5. To establish the pecuniary gain aggravating circumstance, the state must prove that the murder would not have occurred but for the defendant's pecuniary motive. *State v. Harding*, 137 Ariz. 278, 296-97, 670 P.2d 283, 394-95 (1983).

¶76　　　　Determining whether a defendant murdered his victim for pecuniary gain requires a highly fact-intensive inquiry. The state must establish the connection between the murder and motive through direct or strong circumstantial evidence. *State v. Cañez*, 202 Ariz. 133, 159 ¶ 94, 42 P.3d 564, 590 (2002) (holding murder of victim and only witness to robbery "is powerful circumstantial evidence of an intent to facilitate escape" and supports finding pecuniary motive); *State v. Gillies*, 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983) ("Without some tangible evidence, or strong circumstantial inference, it is not for the sentencing court to conclude that because money and items were taken, the purpose of the murder was pecuniary gain.").

¶77　　　　Complex fact situations require careful attention and analysis before a fact-finder confidently can conclude that pecuniary ends motivated the killing. When the state concurrently

66

prosecutes a capital defendant for first degree murder and, for instance, robbery, both crimes resulting from the same occurrence, the state does not establish the pecuniary gain factor simply by showing that the robbery occurred. Rather, the state assumes the additional burden of showing that pecuniary gain was "a motive, cause, or impetus for the murder and not merely the result of the murder." *State v. Kayer*, 194 Ariz. 423, 433 ¶ 32, 984 P.2d 31, 41 (1999); *see, e.g., State v. Lee*, 185 Ariz. 549, 558, 917 P.2d 692, 701 (1996) (affirming pecuniary gain aggravating circumstance where defendant killed to facilitate escape after robbery).

¶78　　　The pecuniary gain factor thus requires more than the jury's conviction of a defendant for first degree murder and robbery or burglary. The fact-finder must draw the separate conclusion that the defendant killed, at least in part, for pecuniary motive. For that reason, we cannot conclude that a jury finding of pecuniary gain inheres in its robbery or burglary verdict.

¶79　　　Therefore, we will apply a harmless error analysis to the pecuniary gain factor. In those instances in which no reasonable jury could find that the state failed to prove a pecuniary gain motive beyond a reasonable doubt, we will find harmless error affecting that factor. In other instances, we will consider whether the *Ring II* error requires that we remand for resentencing.

## 2. Multiple Homicides.

¶80     A.R.S. section 13-703.F.8 permits a judge to find an aggravating circumstance if "[t]he defendant has been convicted of one or more other homicides, as defined in § 13-1101, that were committed during the commission of the offense." A.R.S. § 13-703.F.8. As with the pecuniary gain factor, this factor requires the state to establish more than that the jury convicted the defendant of first degree murder and one or more other homicides occurring around the same time. Instead, all homicides must take place during "one continuous course of criminal conduct." *State v. Rogovich*, 188 Ariz. 38, 45, 932 P.2d 794, 801 (1997) (quoting *State v. Ramirez*, 178 Ariz. 116, 130, 871 P.2d 237, 251 (1994)). This conclusion can be drawn only after the fact-finder analyzes "the temporal, spatial, and motivational relationships between the capital homicide and the collateral [homicide], as well as . . . the nature of that [homicide] and the identity of its victim." *Id.* (quoting *State v. Lavers*, 168 Ariz. 376, 393, 814 P.2d 333, 350 (1991)).

¶81     A jury verdict convicting a defendant of two or more homicides does not in itself establish the multiple homicide aggravating circumstance. Without a finding that the murders are temporally, spatially and motivationally related, the bare jury verdict does not implicitly support the F.8 aggravator. *Id.*

68

¶82      We will find harmless error affecting this factor in those cases in which no reasonable jury could find that the state failed to prove the F.8 factor beyond a reasonable doubt.  In other instances, we will consider whether the *Ring II* error requires that we remand for resentencing.

### 3.  **Age of Victim**.

¶83      Under A.R.S. section 13-703.F.9, an aggravating circumstance  exists when, at the time the murder was committed, "[t]he defendant was an adult . . . or tried as an adult and the murdered person was under fifteen years of age or was seventy years of age or older."  A.R.S. § 13-703.F.9.  The statute is straightforward; the ages of the offender and victim invoke the aggravator.  *Medina*, 193 Ariz. at 511 ¶ 23, 975 P.2d at 101 (holding this aggravating circumstance does not require further finding that the defendant was aware of the victim's age).  The F.9 finding is implicit in the jury's verdict if the jury convicts the defendant of first degree murder and another crime committed against the murder victim in which the age of the victim constitutes a substantive element of the crime.

¶84      In some instances, Arizona's criminal code defines crimes based on the young age of the victim.  For example, a person commits child molestation "by intentionally or knowingly engaging in or causing a person to engage in sexual contact, except sexual

69

contact with the female breast, with a child under fifteen years of age."  A.R.S. § 13-1410.A (2001).

¶85      Because the victim's age constitutes a substantive element of certain criminal offenses, a conviction necessarily reflects a jury determination that the victim was less than fifteen years old.  The jury will have already found the necessary fact, age of the victim, through criminal proceedings compliant with Sixth Amendment safeguards.  *Apprendi*, 530 U.S. at 488, 120 S. Ct. at 2362.  Under these circumstances, the jury's implicit finding of the victim's age satisfies the F.9 aggravating circumstance.

¶86      If the trial judge found the F.9 factor and the jury also convicted the defendant of an age-dependent crime committed against the murder victim, we will find any *Ring II* error harmless.  Other circumstances that may involve harmless error include, for example, those instances in which the defendant stipulated to the age of the victim or in which overwhelming evidence establishes the victim's age.  In other instances, we will consider whether the *Ring II* error requires that we remand for resentencing.

## C.

### If One Aggravating Factor Was Not Subject to *Ring II*, Was Implicitly Found by the Jury or it Was Otherwise Obvious that One Aggravator Has Been Established Beyond a Reasonable Doubt, Is There Need for Resentencing?

¶87      The State asserts that if the jury implicitly found one

70

aggravating factor or the trial judge found one factor not subject to the *Ring II* analysis, we can uphold the capital sentence imposed by the trial judge as harmless error. The argument relies upon the fact that Arizona's superseded sentencing scheme rendered a defendant "death eligible" if one aggravating factor existed. *Ring I*, 200 Ariz. at 279 ¶ 42, 25 P.3d at 1151. Nothing in *Ring II*, the State argues, prevents a trial judge from finding the second and succeeding aggravating factors, as well as finding mitigating factors and balancing them against the aggravator.

¶88    A narrow reading of *Ring II* may permit a judge to decide the existence of additional aggravating factors in the circumstances described by the State. As the State contends, once the government establishes any aggravating factor, a defendant becomes "death eligible" in the strict sense, and establishing additional aggravating factors does not render a defendant "more" death eligible. In our view, however, *Ring II* should not be read that narrowly. Although the Court there considered a death sentence based upon the existence of a single aggravating factor, we conclude that *Ring II* requires a jury to consider all aggravating factors urged by the state and not either exempt from *Ring II*, implicit in the jury's verdict, or otherwise established beyond a reasonable doubt.

¶89    Another factor leads us to conclude that we should not

71

adopt the State's argument. As is evident, the procedures urged by the State do not reflect any sentencing procedure ever adopted by our legislature. In both the superseded and current capital sentencing schemes, the legislature assigned to the same fact-finder responsibility for considering both aggravating and mitigating factors, as well as for determining whether the mitigating factors, when compared with the aggravators, call for leniency. Neither a judge, under the superseded statutes, nor the jury, under the new statutes, can impose the death penalty unless that entity concludes that the mitigating factors are not sufficiently substantial to call for leniency. A.R.S. §§ 13-703.E (Supp. 2002) and 13-703.F (Supp. 2001). The process involved in determining whether mitigating factors prohibit imposing the death penalty plays an important part in Arizona's capital sentencing scheme. We will not speculate about how the State's proposal would impact this essential process. *Clemons v. Mississippi*, 494 U.S. 738, 754, 110 S. Ct. 1441, 1451 (1990) ("In some situations, a state appellate court may conclude that peculiarities in a case make appellate . . . harmless error analysis extremely speculative or impossible."); *see also Johnson v. Nevada*, 59 P.3d 450 (Nev. 2002)(as applied to Nevada law, *Ring II* requires jury to weigh mitigating and aggravating factors under Nevada's statute requiring the fact-finder to further find whether mitigating circumstances

72

are sufficient to outweigh the aggravating circumstances).

¶90    We therefore hold that the presence of one or more aggravating factors either exempt from *Ring II*, inherent in the jury's guilty verdict, or otherwise established beyond a reasonable doubt does not, in itself, establish that a defendant's capital sentence resulted from harmless error.

**D.**

**Does *Ring II* Require Resentencing if a Defendant Conceded or Did Not Challenge the Aggravating Factors Found by the Trial Court?**

¶91    The State contends that if a defendant stipulates to facts sufficient to establish an aggravating factor or fails to challenge one or more aggravating circumstances, that factor stands.  The failure renders error harmless and essentially establishes overwhelming, undisputed proof of that factor's existence.  The defendants argue that neither concession nor failure to contest waives a defendant's right to a jury trial on aggravating factors.  Substantial differences exist between a defendant's decision to concede an aggravating circumstance and a defendant's decision not to contest an aggravating circumstance, and we distinguish between those situations.

¶92    In *United States v. Cotton*, the Supreme Court reviewed a case in which the defendant did not contest an element responsible for his sentence enhancement.  535 U.S. 625, 122 S. Ct. 1781

73

(2002). The issue was whether *Apprendi* required vacating an enhanced sentence under a federal narcotics criminal statute when the government failed to include in the indictment the amount of cocaine, a fact essential to justifying the enhanced sentence. *Id.* at ___, ___ n.3, 122 S. Ct. at 1783, 1786 n.3. After examining for plain error, the Court found no reversible error under *Apprendi* because the government presented overwhelming and essentially uncontroverted evidence of the amount of cocaine base at trial. *Id*. at ___ & n.3, 122 S. Ct. at 1786 & n.3; *see also United States v. Smith*, 282 F.3d 758, 771-72 (9th Cir. 2002) (holding *Apprendi* error harmless where defendant failed to contradict evidence establishing drug quantity or object to jury instruction stating threshold drug quantity need not be found); *Robinson v. United States*, 129 F. Supp. 2d 627, 632 (S.D.N.Y. 2001) (holding failure to submit drug quantity issue to jury did not prejudice defendant when he did not challenge the amount).

¶93        In cases in which a defendant stipulates, confesses or admits to facts sufficient to establish an aggravating circumstance, we will regard that factor as established. Our harmless error inquiry then focuses on whether no reasonable jury could find that the mitigation evidence adduced during the penalty phase is "sufficiently substantial to call for leniency." A.R.S. § 13-703.E. Unless we conclude beyond a reasonable doubt that a

jury would impose a death sentence, we must remand the case for resentencing.   *See Id.* § 13-703.E; *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 1838 (1999); *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993).  See *infra*, Section VIII.

¶94     When a defendant simply fails to challenge an aggravating circumstance at the penalty phase, the state retains the burden of proving the aggravator's existence beyond a reasonable doubt. *See State v. Spreitz*, 190 Ariz. 129, 147, 945 P.2d 1260, 1278 (1997). Our inquiry then becomes whether the state has met its burden.  If reasonable doubt exists as to this factor, then we must consider remanding for resentencing.

**E.**

## Can the State Raise Harmless Error if It Did Not Make That Argument Below?

¶95     The defendants argue that the State waived its harmless error argument by failing to raise it prior to this stage of litigation.  We disagree.  Until the Supreme Court overruled *Walton v. Arizona*, the State had no reason to argue that failure to obtain jury findings as to aggravating factors constituted error at all. *Lockhart v. Fretwell*, 506 U.S. 364, 369 n.2, 113 S. Ct. 838, 842 n.2 (1993) ("Harmless-error analysis is triggered only *after* the reviewing court discovers that an error has been committed.").  Only after the Court defined constitutional error in Arizona's

75

sentencing procedure did the question whether such error was harmless arise. We will not penalize the State for failing to anticipate the Court's holding in *Ring II*.

¶96    Moreover, the Arizona Constitution imposes an independent obligation on the state judiciary not to reverse a case "for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. VI, § 27 (2001); *accord* A.R.S. § 13-3987 (2001). If error is harmless, in these or other cases, substantial justice has been done.

**F.**

### Does the Sixth Amendment Require the Jury to Make *Enmund-Tison* Findings in Capital Felony Murder Cases?

¶97    In cases of first degree felony murder convictions, an *Enmund-Tison* finding must be made to satisfy the Eighth Amendment's proportionality standard. *Tison v. Arizona*, 481 U.S. 137, 107 S. Ct. 1676 (1987); *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368 (1982). In Arizona, the trial judge makes this finding. *See State v. Greenway*, 170 Ariz. 155, 171, 823 P.2d 22, 38 (1991). The defendants argue that *Ring II* requires that *Enmund-Tison* findings be made by a jury. We hold that the Sixth Amendment principles of *Apprendi/Ring* do not require a jury to make *Enmund-Tison* findings.

¶98    The Eighth Amendment's Cruel and Unusual Punishment

Clause prohibits "all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged."[30] *Weems v. United States*, 217 U.S. 349, 371, 30 S. Ct. 544, 551 (1910) (quoting *O'Neil v. Vermont*, 144 U.S. 323, 339-40, 12 S. Ct. 693, 699-700 (1892) (Field, J., dissenting)). In capital punishment terms, the Eighth Amendment requires courts to consider carefully death sentences imposed on defendants convicted of felony murder. In *Enmund v. Florida* and *Tison v. Arizona*, the Supreme Court imposed Eighth Amendment cruel and unusual punishment restraints in capital felony murder cases. The Court held that Eighth Amendment principles forbid a state from sentencing to death a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Enmund*, 458 U.S. at 797, 102 S. Ct. at 3376. Five years later, in *Tison*, the Court refined its prior decision by holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481

---

[30] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666, 82 S. Ct. 1417, 1420 (1962).

U.S. at 158, 107 S. Ct. at 1688.

¶99      The Supreme Court already has addressed the question whether a jury must make *Enmund-Tison* findings.  In *Cabana v. Bullock*, the Court held that the federal constitution does not require a jury to determine a defendant's level of culpability in capital felony murder cases.  474 U.S. 376, 385, 106 S. Ct. 689, 696 (1986).  Foreshadowing its recent Sixth Amendment decisions, the Court distinguished *Enmund* from the statutorily defined elements of a substantive offense at issue in *Apprendi*:

> [O]ur ruling in *Enmund* does not concern the guilt or innocence of the defendant—it *establishes no new elements of the crime of murder that must be found by the jury.* Rather, as the Fifth Circuit itself has recognized, *Enmund* "does not affect the state's definition of any substantive offense, even a capital offense." *Enmund* holds only that the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law: that is, the class of murderers who did not themselves kill, attempt to kill, or intend to kill.

*Id*. (citation and footnote omitted)(emphasis added).

¶100     We conclude that this distinction withstands *Apprendi* and *Ring II*.  *Enmund-Tison* findings affect sentencing very differently than do findings of aggravating circumstances.  Even if a jury is satisfied that the state has established all statutory elements for capital felony murder, including aggravating circumstances, the judge must remove the defendant from the class of defendants

78

otherwise death-eligible if she cannot make *Enmund-Tison* findings.

The question is not whether the state has met its burden but

whether, given a defendant's culpable mental state, the government

can impose capital punishment consistent with the Eighth

Amendment's proportionality threshold. That determination involves

not a Sixth Amendment jury trial right but rather an Eighth

Amendment proportionality analysis, traditionally the prerogative

of the judge. As the *Cabana* Court stated:

> [T]he decision whether a sentence is so disproportionate
> as to violate the Eighth Amendment in any particular
> case, like other questions bearing on whether a criminal
> defendant's constitutional rights have been violated, has
> long been viewed as one that a trial judge or an
> appellate court is fully competent to make.

*Id.* at 386, 106 S. Ct. at 697.

¶101    The difference between aggravating circumstances as

substantive elements of a greater offense and the *Enmund-Tison*

findings as a restraint on capital sentencing dictates our decision

that *Apprendi/Ring* does not require these findings to be made by

the jury. *Id*. The Sixth Amendment assigns to the jury

responsibility for determining whether all statutory criminal

elements exist. Therefore, a defendant cannot receive a particular

sentence unless a jury finds all the elements of the offense

charged. *Id.* at 384, 106 S. Ct. at 696 (citing *Duncan v.

Louisiana*, 391 U.S. 145, 88 S. Ct. 1444 (1968)). The *Enmund-Tison*

findings, on the other hand, operate as a judicially crafted

79

instrument used to measure proportionality between a defendant's criminal culpability and the sentence imposed. These two rules of law are conceptually and constitutionally distinct. We hold that the Sixth Amendment does not require that a jury, rather than a judge, make *Enmund-Tison* findings.

## VIII.

## Conclusion.

¶102      Our review of aggravating circumstances will produce one of several results. In some of these consolidated cases, our review will not allow the conclusion, beyond a reasonable doubt, that the error did not contribute to or affect the capital sentence. In those cases, we must remand for resentencing.

¶103      Other cases will involve aggravators that we will regard as established. In some of those cases, the aggravating factors fall outside the *Ring II* analysis. Others will involve aggravating factors that inhere in the jury's verdict or to which a defendant stipulated. In yet other instances, the evidence presented at trial and the sentencing hearing may be sufficiently overwhelming that we will conclude no reasonable jury would have failed to find the factor established beyond a reasonable doubt. Even in these instances, however, one further determination can affect our harmless error analysis.

¶104      Arizona's statutes require more than the presence of one

or more statutorily defined aggravating factors to impose the death penalty:

> In determining whether to impose a sentence of death or life imprisonment, the trier of fact shall take into account the aggravating and mitigating circumstances that have been proven. The trier of fact shall impose a sentence of death if the trier of fact finds one or more of the aggravating circumstances enumerated in subsection F of this section *and then determines that there are no mitigating circumstances sufficiently substantial to call for leniency.*

A.R.S. § 13-703.E (emphasis added);[31] *see also Id.* § 13-703.01.H. Because a trier of fact must determine whether mitigating circumstances call for leniency, we will affirm a capital sentence only if we conclude, beyond a reasonable doubt, that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency. If we cannot reach that conclusion, we must find reversible error and remand the case for resentencing. In separate opinions, we will consider individually the sentences of these defendants, applying the standards set forth in this opinion.

_____
Ruth V. McGregor, Vice Chief Justice

---

[31] The legislature's post-*Ring II* amendments to section 13-703 replaced "court" with "trier of fact," referring to the jury or, in cases of a waiver of trial by jury, the court. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

CONCURRING:

_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice




F E L D M A N, Justice (Retired), concurring in part and dissenting in part:

¶105    I dissent from Part VI of the majority opinion because I cannot agree that the complete absence of the jury in the separate capital sentencing proceeding that determines a defendant's eligibility for the death penalty is reviewable for harmless error. In my view, the denial of a jury in the sentencing phase is a defect in the fundamental mechanism of the trial and is therefore structural error; thus the death sentence should be vacated.  This is not only required by logic but is the teaching of a long line of our cases.

¶106    We have just recently held, for instance, that the erroneous exclusion for cause of prospective jurors was structural error that required reversal.  *State v. Anderson*, 197 Ariz. 314, 324, ¶ 23, 4 P.3d 369, 379, ¶ 23 (2000).  To hold otherwise and

review for harmless error would lead us "down a slippery slope that could be used to justify overlooking every structural error [such as] denial of a jury trial or the right to counsel." *Id.* at 323, ¶¶ 21-22, 4 P.3d at 378, ¶¶ 21-22; *see also State v. Henley*, 141 Ariz. 465, 469, 687 P.2d 1220, 1224 (1984) (structural error to try defendant to eight-person jury when constitution guaranteed twelve-person jury for crime charged); *State v. Luque*, 171 Ariz. 198, 200, 829 P.2d 1244, 1246 (App. 1992) (trial to wrong number of jurors is fundamental, structural error).

**¶107**    If, as we have held, it is fundamental and structural error erroneously to exclude potential jurors or try a defendant to an insufficient number of jurors, it is difficult to see how deprivation of trial by jury at the capital sentencing phase can be less erroneous. The reason is plain: it is simply impossible to predict what a jury would have done if one had been impaneled. *State v. Smith*, 197 Ariz. 333, 339-40, 4 P.3d 388, 394-95 (App. 1999). Appellate review of such error is not "like measuring the effect of erroneous evidentiary rulings against the overall weight of properly admitted evidence. Errors involving the composition of the court or jury affect the legitimacy of the entire proceeding, leaving nothing to measure or weigh and requiring reversal." *Anderson,* 197 Ariz. at 323, ¶ 22, 4 P.3d 378, ¶ 22. The error in these cases is unlike trial errors, which can be "quantitatively

assessed in the context" of all the evidence. *Arizona v. Fulminante*, 499 U.S. 279, 307, 111 S. Ct. 1246, 1264 (1991).

¶108  The majority concludes, however, that the failure to submit any part of the determination of aggravating circumstances to a jury was not structural error. Op. at ¶ 44. I cannot agree. As the majority explains, in capital sentencing prior to *Ring II*, the trial proceeded in two phases, a guilt phase and a sentencing phase. Op. at ¶¶ 7-13. The first, before a jury, was concerned only with the question of conviction or acquittal of the crime of first degree murder. The second, tried to the court under Arizona's prior sentencing statute, was concerned only with the issue of aggravating factors and mitigating circumstances. Each phase was tried to different factfinders on different issues. The Supreme Court, in these circumstances, has held that the sentencing phase resembles a separate trial, so much so that the double jeopardy clause applies both to the guilt phase and the sentencing phase. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 686-87, 104 S. Ct. 2052, 2064 (1984); *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 1862 (1981) (double jeopardy protection attaches to capital sentencing proceeding); *Arizona v. Rumsey*, 467 U.S. 203, 209, 104 S. Ct. 2305, 2309 (1984) (Arizona capital sentencing proceedings resemble a trial for purposes of the double jeopardy clause). This was our view also. *See State v. Rumsey*, 136 Ariz.

84

166, 665 P.2d 48 (1983).

¶109    Complete denial of trial by jury at the sentencing phase, therefore, would seem to preclude harmless error analysis.  The right to trial by jury is "fundamental to the American scheme of justice." *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S. Ct. 1444, 1447 (1968)*.*  The Supreme Court has now held defendants were entitled to a jury at the sentencing phase to determine the existence of the alleged aggravating factors but were denied that constitutional right.  *Ring v. Arizona*  536 U.S., ___, ___, 122 S. Ct. 2428, 2443 (2002) *(Ring II).*  As noted, in Arizona denial of a jury trial is structural error.  The same rule obtains in the federal system.  *Sullivan v. Louisiana,* 508 U.S. 275, 281-282, 113 S. Ct. 2078, 2083 (1993) (the deprivation of the right to a jury trial unquestionably qualifies as structural error).

¶110    The majority rejects this conclusion and supports its decision on the basis of *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1927 (1999).  Op. at ¶ 44.  But *Neder* and the cases that rely on it are cases of trial error, not error in the structure or mechanism of the trial.  Neder was tried to a jury which was present during the entire trial.  The error consisted of the trial judge failing to instruct the jury on materiality, one of the elements of the crime of tax fraud.  The difference is that in *Neder,* the jury was presented with all of the evidence, and the

issue of materiality was uncontested. *Neder,* 527 U.S. at 15, 119 S. Ct. at 1836. The Supreme Court held this was trial error, reviewable under a harmless error analysis. *Id.*

¶111 The present cases are different. Unlike *Neder*, the error in these cases did not occur during the presentation of the case to the jury. Instead, the error was the complete absence of the jury during the penalty phase of the trial. The jury in Ring's trial heard no evidence, nor was it asked to make findings of any kind on the aggravating circumstances of the crime. And, even if such evidence may have been introduced at the guilt phase, it was not considered by a jury in the context of the death penalty. As a consequence, a jury verdict was never returned in these cases on the greater offense of capital murder. Thus, there is simply "no object, so to speak, upon which harmless-error scrutiny can operate." *Sullivan,* 508 U.S. at 280, 113 S. Ct. at 2082.

¶112 To apply harmless error review in these consolidated cases would encourage the court to speculate that reversal is not necessary because the non-existent jury would have convicted the defendant in any event. The court, in other words, would transform itself into a phantom jury. The argument is not supportable.

¶113 In these consolidated cases, the majority must concede that the jury was erroneously discharged before the trial was completed. If this permits harmless error review, then, one must

86

suppose, we would also review for harmless error if the trial judge directed a verdict for the state on one or more elements of the charge, granted summary judgment on an element, or discharged the jury after it had determined some but not all of the charges. Such results are also unsupportable, in my view. "The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty." *Id.*

¶114      Today's opinion puts the majority in the position of speculating about one of the great unknowables — what a non-existent jury would have done. We might argue about whether some or any degree of accuracy can be obtained by such speculation, but the argument is irrelevant. Both the state and federal constitutions guarantee defendants the right to trial by jury — not for one-half of the trial, not for two-thirds, four-fifths, or nine-tenths of the trial but for the whole trial. When the jury trial guarantee is violated, I believe structural error has occurred. The Constitution does not then permit judges to conclude the error was harmless; it requires the court to conclude that the trial mechanism violated the Constitution and the result should not be affirmed.

_____
Stanley G. Feldman, Justice (Retired)

¶**115**     I concur in all but Part VI of the majority opinion and join in Justice Feldman's dissent as to that part.

_____

Charles E. Jones, Chief Justice